In re Sammy G. DAILY, Debtor.

**FEDERAL DEPOSIT INSURANCE CORP.**, Receiver for Indian Springs State Bank, Plaintiff–Appellee,

v.

**Sammy G. DAILY, Defendant–Appellant.**

No. 93–15495.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1994.

Decided Feb. 3, 1995.

Sammy G. Daily, in pro. per.

Kathryn R. Norcross, F.D.I.C., Washington, DC, for plaintiff-appellee.

Jerold K. Guben, Reinward, O'Connor, Marrack, Hoskins & Playdon, Honolulu, HI, for plaintiff-appellee.

Before: BROWNING, TROTT, and KLEINFELD, Circuit Judges.

PER CURIAM:

This is an appeal from an order of the district court holding that a debt owed by Sammy G. Daily to the Federal Deposit Insurance Corporation ("FDIC"), as receiver for Indian Springs State Bank, was for money obtained by fraud and, therefore, not dischargeable in bankruptcy. We affirm.

I

Daily filed a petition for relief in the United States Bankruptcy Court for the District of Hawaii. The FDIC filed an adversary complaint to determine the dischargeability of a debt allegedly owed the FDIC by Daily ("dischargeability complaint"). The FDIC alleged it had filed a civil action[1] in the United States District Court for the District of Kansas ("the RICO suit") under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), asserting that defendants had obtained money from Indian Springs State Bank by various fraudulent acts. The FDIC noted that Daily had not been named as a defendant in the RICO suit because of the automatic stay in effect in Daily's bankruptcy proceeding. The FDIC asked the Hawaii bankruptcy court to modify the automatic stay to permit the FDIC to join Daily as a defendant in the RICO suit. The FDIC asserted that any money judgment that might be entered against Daily in the RICO suit would be nondischargeable in bankruptcy, and it asked the bankruptcy court to stay further proceedings on the dischargeability complaint until the RICO suit was concluded.

---

1. In a separate, criminal proceeding in the Kansas district court, Daily was convicted of a criminal fraud charge arising out of the same facts. On appeal, the Tenth Circuit determined that, although there was sufficient evidence to support the conviction, reversal was nonetheless required because of a deficiency in the trial court's jury instructions regarding favorable character evidence presented by Daily and a codefendant. *See United States v. Daily*, 921 F.2d 994 (10th Cir.1991).

The FDIC and Daily then entered into a stipulation, which the bankruptcy court approved, agreeing to a modification of the automatic stay to permit the FDIC to proceed against Daily in the RICO action. The stipulation provided that any money judgment obtained against Daily in the RICO action would be proven and allowable against the bankruptcy estate, that the FDIC retained its right to enforce any nondischargeable judgment entered against Daily in the RICO action, and that proceedings on the FDIC's dischargeability complaint would be stayed "until conclusion of the [d]istrict [c]ourt proceedings [in the RICO action], which adjudication [would] be binding on the parties [to the stipulation]."[2]

After the bankruptcy court approved the stipulation, the FDIC amended its complaint in the RICO suit to name Daily and his real estate brokerage firm as defendants. The FDIC then sought discovery. Nothing was forthcoming. After pressing its requests for discovery unsuccessfully for nearly two years, the FDIC sought relief under Rule 37. After full briefing and a hearing, the district court found that Daily's failure to provide discovery "was the result of a deliberate, dilatory course of conduct," that Daily had "chose[n] to delay responses until delay was no longer an option," and that Daily's "strategy of delay and evasiveness ... [had] significantly prejudiced the plaintiffs ... [and had] significantly interfered with the judicial process." *Federal Deposit Ins. Corp. v. Renda*, 126 F.R.D. 70, 72–73 (D.Kan.1989). The court ordered all allegations of the complaint deemed admitted by Daily and entered a default judgment in favor of the FDIC for the damages alleged, trebled pursuant to 18 U.S.C. § 1964(c).[3] The Tenth Circuit affirmed, upholding the district court's determination that Daily's failure to provide discovery had been strategic rather than inadvertent and concluding that entry of judgment against Daily on the merits did not violate due process. *FDIC v. Daily*, 973 F.2d 1525, 1530–32 (10th Cir.1992).

Relying on the stipulation and on the orders entered by the Kansas district court and the Tenth Circuit in the RICO action, the FDIC moved for summary judgment on its dischargeability complaint. After briefing and hearing, the bankruptcy court held the debt nondischargeable. The court concluded that the Kansas court's order and judgment in the RICO action established the allegations of fraud in the RICO complaint and that the facts thus established were sufficient to preclude the discharge of Daily's debt to the FDIC under 11 U.S.C. § 523(a)(2)(A) and (B), as a debt for money obtained by fraud. The Hawaii district court affirmed. This appeal followed.

■ We review the decision of the bankruptcy court independently. *Dewhirst v. Citibank (Arizona) (In re Contractors Equip. Supply Co.)*, 861 F.2d 241, 243 (9th Cir.1988). The bankruptcy court based its conclusion that the judgment in the RICO action precluded Daily from relitigating the issues relevant to discharge in the bankruptcy proceeding on (1) the doctrine of collateral estoppel

---

2. The stipulation provided, in full:

   IT IS HEREBY STIPULATED, by and between the parties hereto, through their respective counsel, that the automatic stay is vacated, permitting Federal Deposit Insurance Corporation ("FDIC") to name and pursue Sammy George Daily ("Debtor"), as a defendant in Case No. 85–2216–0, filed by FDIC on April 5, 1985, in the United States District Court for the District of Kansas ("District Court Proceedings"); provided, however, that if any money judgment is obtained against the Debtor, that such judgment shall be deemed proven and allowable against the estate but as long as this bankruptcy case is pending, such money judgment shall be enforceable against the estate only as directed in a confirmed Plan of Reorganization or by order of this Court.

   IT IS FURTHER STIPULATED that FDIC retains its rights to enforce any non-dischargeable debt or judgment against Debtor and that the parties agree to stay the proceedings under FDIC's First Amended Complaint to Determine Dischargeability, filed June 18, 1985, until conclusion of the District Court proceedings, which adjudication shall be binding on the parties hereto.

3. The court awarded additional damages to the FDIC in its capacity as manager of the Resolution Trust Fund. That aspect of the judgment was not at issue in the bankruptcy court's determination of nondischargeability and is not before us.

and (2) the parties' stipulation. We consider these alternative grounds in turn.

## II

Daily contends the judgment in the RICO action did not preclude relitigation in the bankruptcy proceeding of the issue of whether he had obtained money by fraud because the judgment was based on Daily's default and the issues were, therefore, not "actually litigated." [4]

■ The judgment entered in the RICO action was not an ordinary default judgment. Daily did not simply decide the burden of litigation outweighed the advantages of opposing the FDIC's claim and fail to appear. He actively participated in the litigation, albeit obstructively, for two years before judgment was entered against him. A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication. In such a case the "actual litigation" requirement [5] may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so.

In *United States v. Gottheiner (In re Gottheiner)*, 703 F.2d 1136 (9th Cir.1983), we approved use of collateral estoppel to establish the existence of a debt in bankruptcy although the prior judgment relied upon to establish the debt rested on an unopposed motion for summary judgment. We deemed the requirement of "actual litigation" satisfied notwithstanding the debtor's failure to oppose the motion, stating:

Gottheiner did not simply give up from the outset. For sixteen months he actively participated in litigation.... That after many months of discovery Gottheiner decided his case was no longer worth the effort does not alter the fact that he had his day in court. Under the circumstances we hold that ... collateral estoppel properly was available to the [creditor].

*Id.* at 1140.

■ The same may be said here. Daily did not simply give up but actively participated in the adversary process for almost two years prior to the FDIC's motion for default judgment. As the bankruptcy court observed, "Daily had a full and fair opportunity to litigate the allegations contained in the [RICO complaint] but [instead] ... chose not to participate in the discovery process and pre-trial proceedings[, and to] frustrate[ ] and thwart[ ] the FDIC's trial preparation[ ] and def[y] the [o]rder of the United States District Court compelling discovery."

In these circumstances, collateral estoppel was available to the FDIC, and the district court did not abuse its discretion by applying the doctrine to preclude further litigation of issues determined in the RICO action. None of the factors that might counsel a court not to apply collateral estoppel in a particular case was present here.[6] Without denying Daily his day in court, application of the doctrine served its central purposes of "protect[ing] [the prevailing party] from the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). By contrast, denying preclusive

---

4. *See, e.g., M & M Transmissions, Inc. v. Raynor (In re Raynor)*, 922 F.2d 1146, 1149 (4th Cir. 1991); *Matter of McMillan*, 579 F.2d 289, 292 (3d Cir.1978).

5. For the requirements of collateral estoppel under federal law, *see Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir.1992).

6. It cannot be said, for example, that the RICO action involved so small an amount or was brought in such an inconvenient forum that the costs of litigation ultimately outweighed the bur-

den of a default judgment. *See* Restatement (Second) of Judgments § 27 cmt. e (1982). The presence of these or other factors might guide a court to deny preclusion in a given case, even if the doctrine's formal requirements are otherwise satisfied. *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir.1988) (noting that, while the availability of collateral estoppel in a particular case is a question of law, the decision to apply the doctrine is vested in the trial court's discretion).

effect to the RICO judgment on the ground that the issues relevant to discharge were not fully tried in that proceeding would permit Daily to delay substantially and perhaps ultimately avoid payment of the debt by deliberate abuse of the judicial process.

■ Due process is not violated by a court's entry of a default judgment or other sanction against a party for refusal to cooperate with discovery. *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 209–10, 78 S.Ct. 1087, 1094–95, 2 L.Ed.2d 1255 (1958). The court's action presumes, in essence, that defendant's conduct is "but an admission of the want of merit in the asserted defense." *Id.* at 210, 78 S.Ct. at 1095 (internal quotations omitted). Nor is due process violated if the defendant is later held to the consequences of such a judgment in a bankruptcy discharge proceeding. It is implicit in the doctrine of collateral estoppel that, where a party has been accorded a full and fair opportunity to litigate an issue in a prior proceeding, due process is not violated by denying the party a further opportunity to litigate the same issue in a subsequent proceeding. *See Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971).

### III

■ The bankruptcy court concluded the stipulation [7] "bound both the FDIC and Daily to any final judgment issued by the [c]ourt" in the RICO proceeding and, thus, foreclosed further litigation of the issues determined by that judgment. Daily does not challenge the bankruptcy court's determination that the allegations of the complaint in the RICO suit were sufficient, if established, to render a money judgment entered in that suit nondischargeable, and that Daily was aware of this consequence of the stipulation.[8]

Daily contends, however, that the stipulation bound the parties only to the extent that facts were determined after a trial on the merits. He argues this intention is implicit in the statement in paragraph eighteen of the FDIC's bankruptcy complaint that "[i]f a judgment is rendered against Debtor in the [RICO action], said judgment will be [for a nondischargeable debt] under § 523(a)(2)(A) or § 523(a)(2)(B)." The judgment rendered in the RICO action met the description in paragraph eighteen precisely. Nothing in the language of paragraph eighteen implies that the judgment rendered in the RICO suit must have been based on trial rather than default.

■ Daily argues that, even if the stipulation has the meaning for which the FDIC contends, it cannot bind the parties because it did not comply with the requirements of 11 U.S.C. § 524(c). Section 524(c) is applicable to agreements by debtors reaffirming otherwise dischargeable debts. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 81 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5867. In this case, however, as both the stipulation and the bankruptcy complaint contemplated, the disputed debt was nondischargeable. Moreover, the debt was the subject matter of the stipulation, not the consideration for it. *See* 11 U.S.C. § 524(c).

■ Daily argues public policy considerations precluded him from "contract[ing] away the right to a discharge in bankruptcy," relying on *Klingman v. Levinson,* 831 F.2d 1292, 1296 n. 3 (7th Cir.1987); however, as the court in that case went on to say, "a debtor may stipulate to the underlying facts that the bankruptcy court must examine to determine whether a debt is dischargeable[,]" *id.* By agreeing that the determination of the Kansas court in the RICO suit would be binding in the bankruptcy proceeding, Daily did not contract away his right to discharge; he merely agreed to be bound by a single

---

7. The text of the stipulation is set forth in note 2.

8. This conclusion is indisputable. The RICO complaint clearly alleged that defendants, including Daily, had obtained money from the bank by fraudulent means. The FDIC stated in its dischargeability complaint that a judgment against Daily in the RICO action would be for a nondis-

chargeable debt under section 523(a). The purpose of the stipulation was to stay proceedings on the FDIC's dischargeability complaint to permit a single determination, in the RICO suit, of the issues relevant to discharge of Daily's debt to the FDIC.

judicial determination of the issues relevant to discharge. The stipulation was valid.

## IV

We do not consider Daily's argument as to punitive damages, raised for the first time in this court. *See Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1213 (9th Cir.1994).

AFFIRMED.