United States Court of Appeals,

Eleventh Circuit.

No. 94-4871.

In re Freddie Maxton BUSH, Debtor.

Freddie Maxton BUSH, Plaintiff-Appellant,

v.

BALFOUR BEATTY BAHAMAS, LIMITED, Defendant-Appellee.

Aug. 31, 1995.

Appeal from the United States District Court for the Southern District of Florida. (No. 92-8645-CIV-KMM), K. Michael Moore, Judge.

Before EDMONDSON, Circuit Judge, HILL, Senior Circuit Judge, and MILLS[*], District Judge.

HILL, Senior Circuit Judge:

In this appeal we are asked to decide whether the appellee's judgment against the appellant is dischargeable in bankruptcy. The bankruptcy court held that the judgment was nondischargeable and the district court affirmed. For the reasons set forth below, we affirm the order of the district court.

I. BACKGROUND

In November of 1989, Balfour Beatty Bahamas, Ltd. ("Balfour Beatty") filed a five count Complaint in the United States District Court for the Southern District of Florida styled *Balfour Beatty Bahamas, Ltd. v. Boca Raton Millwork, Inc. and Fred M. Bush* ("prior action").[1] The five count Complaint contained only one count

---

[*] Honorable Richard Mills, U.S. District Judge for the Central District of Illinois, sitting by designation.

[1] Boca Raton Millwork, Inc. is a closely held corporation owned by Bush.

against Bush, stating a claim for fraud.  In December of 1989, Bush filed an Answer and Counterclaim placing the fraud allegations in issue.

The parties commenced discovery, exchanging requests for documents and trial exhibits.  This continued for several months, but problems arose.  Bush's counsel had such difficulty contacting Bush that the district court allowed him to withdraw from the case, granting Bush's motion to proceed *pro se.*  The district court ordered all future pleadings be mailed directly to Bush at his home address.

Subsequently, Bush failed to produce trial exhibits despite repeated requests by Balfour Beatty.  He also failed to appear for a properly noticed deposition, after Balfour Beatty had sent him three reminder letters enclosing a copy of Federal Rule of Civil Procedure 37(d) outlining the possible consequences of failure to appear.  Bush never produced the requested documents, nor appeared for his deposition.

In August of 1990, Balfour Beatty filed a motion for sanctions pursuant to Rule 37(d), Fed.R.Civ.P.  Bush responded, claiming he had been out of state during the relevant time periods.  Affidavits presented to the district court established that Bush received actual notice of his deposition more than ten days prior to the scheduled date, and that he was not in town on that date.

In November of 1990, the district court conducted a pre-trial conference.  Bush failed to appear.  During the conference, the court heard oral argument on Balfour Beatty's motion for sanctions. Finding that Bush's conduct warranted the imposition of sanctions,

the district court entered a Pre-Trial Order granting Balfour Beatty a judgment by default on the grounds stated in its Complaint.[2] Bush filed no objections to the default, nor to the proposed final judgment which was served on him. The Final Judgment was entered on January 29, 1991.

On November 7, 1991, Bush filed a voluntary Chapter 7 bankruptcy petition. In the dischargeability proceeding, Balfour Beatty timely filed an adversary complaint to determine dischargeability of its judgment debt against Bush. Balfour Beatty filed a motion for summary judgment, asserting that the default judgment in the prior action conclusively established the elements necessary for the bankruptcy court to hold the debt non-dischargeable under Bankruptcy Code § 523(a)(2)(A) as a debt for money obtained by fraud.

Bush argued that no preclusive effect should be accorded the prior judgment because the issue of fraud had not been actually litigated in the prior action. Bush asserted that he was entitled to deny the fraud, and that Balfour Beatty must put on its proof. The bankruptcy court disagreed, and granted Balfour Beatty's motion for summary judgment holding that Bush was estopped by the default judgment to deny the fraud alleged in Balfour Beatty's complaint. The bankruptcy court then entered a final judgment holding the debt nondischargeable. On review, the district court affirmed the

---

[2]The district court also entered a default against Boca Raton Millwork, Inc. on its counterclaim against Balfour Beatty and deferred entry of a default against the corporation on Balfour Beatty's Complaint pending a lift of the automatic stay in effect as a result of the corporations's filing for bankruptcy.

judgment.

## II. DISCUSSION

The only issue on appeal is whether, in a bankruptcy discharge exception proceeding, a default judgment based upon allegations of fraud may be used to establish conclusively the elements of fraud and prevent discharge of the judgment debt.[3] This is an issue of first impression in this Circuit.

We review the decision of the bankruptcy court independently. *In re St. Laurent,* 991 F.2d 672, 675 (11th Cir.1993). The bankruptcy court's findings of fact are subject to a clearly erroneous standard of review. Fed.R.Bank.P. § 8013. *See also In re Garfinkle,* 672 F.2d 1340, 1344 (11th Cir.1982). Its conclusions of law are reviewed *de novo. In re James Cable Partners, L.P.,* 27 F.3d 534, 536 (11th Cir.1994).

Collateral estoppel prohibits the relitigation of issues that have been adjudicated in a prior action. The principles of collateral estoppel apply in discharge exception proceedings in bankruptcy court. *Grogan v. Garner,* 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); *In re Latch,* 820 F.2d 1163 (11th Cir.1987).

In order for a party to be estopped from relitigating an issue regarding the dischargeability of a debt, a bankruptcy court must find the following four elements present:

1. The issue in the prior action and the issue in the bankruptcy court are identical;

2. The bankruptcy issue was actually litigated in the prior action;

---

[3]11 U.S.C. § 523(a)(2)(A) precludes the discharge of a debt for money obtained by fraud.

3.  The determination of the issue in the prior action was a critical and necessary part of the judgment in that litigation; and

4.  The burden of persuasion in the discharge proceeding must not be significantly heavier than the burden of persuasion in the initial action.

*In re Yanks,* 931 F.2d 42, 43 n. 1 (11th Cir.1991) (citing Restatement (Second) of Judgments § 28(4) (1982)).

In the instant case, the bankruptcy court found that elements one and three were clearly present.[4]  We agree.  In finding the issue of fraud was *actually litigated* in the prior action, the bankruptcy court relied on a decision from the Eastern District of Michigan.  That court held:

> Collateral estoppel applies only to those issues which were "actually" or "fully" litigated in the prior action.  However, this rule does not refer to the quality or quantity of argument or evidence addressed to an issue.  It requires only two things:  first, that the issue has been effectively raised in the prior action, either in the pleadings or through development of the evidence and argument at trial or on motion;  and second, that the losing party have had "a fair opportunity procedurally, substantively and evidentially" to contest the issue.  The general rule therefore is that subject to these restrictions default judgments do constitute res judicata for purposes of both claim preclusion and issue preclusion (collateral estoppel).

*Overseas Motors, Inc. v. Import Motors Ltd.,* 375 F.Supp. 499, 516 (E.D.Mich.1974), *aff'd* 519 F.2d 119 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975) (citations omitted).

---

[4]The bankruptcy court did not address the fourth element, that the burden of persuasion in the discharge proceeding not be significantly heavier than that in the initial action.  The burden of proof in an action for fraud in a federal district court applying Florida law is a preponderance, or greater weight of the evidence.  *Watson Realty Corp. v. Quinn,* 452 So.2d 568 (Fla.1984).  The burden of persuasion in the bankruptcy action to prove fraud under § 523 is a preponderance of the evidence.  *See Grogan,* 498 U.S. at 279, 111 S.Ct. at 655-56.  This element is met.

Finding that Bush had ample opportunity to contest the fraud allegations in the prior action, the bankruptcy court gave preclusive effect to the default judgment.

Although *Overseas Motors* did not involve a bankruptcy discharge proceeding,[5] the Michigan district court did give preclusive effect to a default judgment, observing that "a party cannot be permitted to avoid the law merely by avoiding the courts."  375 F.Supp. at 545.

The general federal rule, however, is to the contrary.[6]

---

[5]The default judgment was entered against Overseas Motors for refusal to participate in a contractually required arbitration.  *Overseas Motors,* in which the default was given preclusive effect, was a subsequent antitrust action in the Michigan district court.

[6]Where the prior default judgment was rendered in state court, a different analysis may be required.  In a recent opinion, the Bankruptcy Appellate Panel ("BAP") of the Ninth Circuit Court of Appeals held that 28 U.S.C. § 1738 and the Supreme Court's decision in *Marrese v. American Academy of Orthopedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) require a bankruptcy court to apply Florida law to determine the preclusive effect of a Florida default judgment in a dischargeability proceeding.  *In re Nourbakhsh,* 162 B.R. 841 (Bankr. 9th Cir.1994).  The BAP reasoned that Section 1738 requires a bankruptcy court to apply the full faith and credit doctrine to dischargeability issues such as fraud;  and the Supreme Court held in *Marrese* that this statute "directs a federal court to refer to the preclusion law of the State in which judgment was rendered" (quoting *Marrese* 470 U.S. at 380, 105 S.Ct. at 1332).  Finding that in Florida "a default judgment conclusively establishes between the parties ... the truth of all material allegations contained in the complaint in the first action and every fact necessary to uphold the default judgment ...," (citing *Perez v. Rodriguez,* 349 So.2d 826, 827 (Fla.Dist.Ct.App.1977)), the BAP found that "a Florida State Court would hold that the entry of a default judgment is tantamount to a dispute that has been "actually litigated.' " *Nourbakhsh,* 162 B.R. at 844.  Under *Marrese,* the BAP held that a bankruptcy court must give preclusive effect to a Florida default judgment.

Another panel of this court has stated that the collateral estoppel law of the state rendering the judgment

Ordinarily a default judgment will not support the application of collateral estoppel because "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated."  Restatement (Second) of Judgments § 27 cmt. e (1982). *See also* Restatement of Judgments § 68 cmt. d, e (1942).  The circuits which have considered the issue in the context of bankruptcy discharge exception proceedings have adhered to this view.  *See e.g., Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir.1981) ("If the important issues were not actually litigated in the prior proceeding, *as is the case with a default judgment,* then collateral estoppel does not bar relitigation in the bankruptcy court.") (emphasis added); *In re: Raynor,* 922 F.2d 1146, 1150 (4th Cir.1991), *In re Gottheiner,* 703 F.2d 1136, 1140 (9th Cir.1983); *In re McMillan,* 579 F.2d 289, 292 (3d Cir.1978).

The underlying rationale of these decisions is that "a party may decide that the amount at stake does not justify the expense and vexation of putting up a fight.  The defaulting party will certainly lose that lawsuit, but the default judgment is not given collateral estoppel effect."  *In re Gottheiner,* 703 F.2d at 1140 (citations omitted).

There is authority to the contrary.  A number of bankruptcy courts have given preclusive effect in a dischargeability proceeding to a prior default judgment.  *See e.g., In re Seifert,*

---

must be applied in a dischargeability proceeding. *See In re St. Laurent,* 991 F.2d 672, 675-76 (11th Cir.1993).  Because we consider the preclusive effect of a prior *federal* court default judgment in the instant case, we do not reach the issue of whether *Marrese* requires that a Florida default judgment be accorded preclusive effect in a bankruptcy discharge proceeding.

130 B.R. 607, 609 (Bankr.M.D.Fla.1991); *In re Austin,* 93 B.R. 723 (Bankr.D.Colo.1988); *In re Wilson,* 72 B.R. 956, 959 (Bankr.M.D.Fla.1987); *In re Eadie,* 51 B.R. 890 (Bankr.E.D.Mich.1985). These courts have reasoned that:

> Debtor/defendant was given the full opportunity to defend himself in the [prior] action and he chose not to do so. Debtor/defendant could have reasonably foreseen the consequences of not defending an action based in part on fraud. *It would be undeserved to give debtor/defendant a second bite at the apple when he knowingly chose not to defend himself in the first instance.*

*In re Wilson,* 72 B.R. at 959 (emphasis added).

We also are reluctant to allow this debtor a second bite at the apple. Bush actively participated in the prior action over an extended period of time. Subsequently, he engaged in dilatory and deliberately obstructive conduct, and a default judgment, based upon fraud, was entered as a sanction against him. He now attempts, in this bankruptcy proceeding, to avoid Section 523 by denying the fraud. Such abuse of the judicial process must not be rewarded by a blind application of the general rule denying collateral estoppel effect to a default judgment.

On facts very similar to the instant case, the Court of Appeals for the Ninth Circuit recently affirmed use of a default judgment entered as a sanction to estop a debtor from denying the fraud in bankruptcy court. *In re Daily,* 47 F.3d 365, 368-69 (9th Cir.1995). Characterizing the prior default judgment as not "ordinary," the Ninth Circuit noted that:

> Daily did not simply decide the burden of litigation outweighed the advantages of opposing the [plaintiff's] claim and fail to appear. He actively participated in the litigation, albeit obstructively, for two years before judgment was entered against him. A party who deliberately precludes resolution of factual issues through normal

adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication. *In such a case the "actual litigation" requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so.*

*Id.* at 368 (emphasis added).[7]

Like Daily, Bush did not simply give up at the outset. He actively participated in the adversary process for almost a year. He was represented by counsel. He answered the complaint. He filed a counterclaim. He filed discovery requests. After undertaking to represent himself, he began to refuse to cooperate in discovery. He refused to produce documents despite repeated requests. He refused to appear at his properly noticed deposition. He *did* respond to Beatty Balfour Beatty's Motion for Sanctions claiming he was out of state on the scheduled day. At the district court's properly noticed pre-trial conference, Bush failed to appear. As in *Daily,* the default judgment for fraud against Bush was entered pursuant to Rule 37 as a sanction for deliberate refusal to participate in discovery. In upholding the bankruptcy

---

[7]Interestingly, the Ninth Circuit found support for this result in its prior decision in *In re Gottheiner,* 703 F.2d 1136 (9th Cir.1983), which is often cited, as did we above, for the proposition that collateral estoppel may *not* rest on a *default* judgment. In that case, however, the Ninth Circuit did approve use of a default judgment to estop a debtor from denying a debt in the dischargeability proceeding. The court found that the issues were "actually litigated" because the debtor in the previous action "did not simply give up from the outset. For sixteen months he actively participated in litigation.... That after many months of discovery Gottheiner decided his case was no longer worth the effort does not alter the fact that he had his day in court." *Id.* at 1140. Finding such circumstances "quite different" from an uncontested default, the Ninth Circuit held that the application of collateral estoppel was not an abuse of discretion.

court's award of preclusive effect to this judgment, the district court said:

> It would be fundamentally unfair to force Balfour Beatty to spend time and money preparing the same discovery simply because Bush has determined that he now wishes to defend the allegations of fraud and avoid his judgment debt in bankruptcy court.

We find *Daily* persuasive. Where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort to bring the action to judgment, it is not an abuse of discretion [8] for a district court to apply the doctrine of collateral estoppel to prevent further litigation of the issues resolved by the default judgment in the prior action. Bush had ample warning from the prior court and could reasonably have foreseen the conclusive effect of his actions. In such a case, collateral estoppel may apply to bar relitigation of the issues resolved by the default judgment. *See Klingman v. Levinson,* 831 F.2d 1292, 1296 (7th Cir.1987) (quoting 1B. J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.444[1], at 794 (2d ed. 1984) ("Justice, then, is probably better served if ... collateral estoppel does not apply

---

[8]We note that whether to allow issue preclusion is within the sound discretion of the trial court. *Parklane Hosiery Company, Inc. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651-52, 58 L.Ed.2d 552 (1979). The presence of mitigating factors in another case might cause a court to exercise discretion to deny preclusion to a default judgment even if the doctrine's formal elements are otherwise met. In some cases, the amount of money at stake or the inconvenience of the forum might disincline a defendant to offer a defense. In the case of such an "ordinary" default, a subsequent court might decline to allow preclusion. In this case, however, the amount of money was substantial, the forum was convenient and Bush did, in fact, participate in the litigation long after the issue was joined.

to ... default judgments ... *unless it can be said that the parties could reasonably have foreseen the conclusive effect of their actions*.") (emphasis added). As the Ninth Circuit observed in *Daily:*

> Without denying Daily his day in court, application of the doctrine served its central purposes of "protect[ing] [the prevailing party] from the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions." By contrast, denying preclusive effect to the [prior] judgment on the ground that the issues relevant to discharge were not fully tried in that proceeding would permit Daily to delay substantially and perhaps ultimately avoid payment of the debt by deliberate abuse of the judicial process.

*Id.* at 368 (alteration in original) (citation omitted). Just as due process is not offended by the entry of a default judgment against a party for failure to cooperate with discovery, *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 209-10, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958), neither is due process offended if a debtor is held to the consequences of that judgment in a subsequent bankruptcy discharge proceeding. *See Blonder-Tongue Lab. Inc. v. University of Illinois Found.,* 402 U.S. 313, 328-29, 91 S.Ct. 1434, 1442-43, 28 L.Ed.2d 788 (1971). The order of the district court affirming the judgment of the bankruptcy court is

AFFIRMED.