**In re Ralph Winston SIMPSON, f/d/b/a Fresh and Fancy, and Christine Marie Simpson, Debtors.**

**Bruce Monica and Martha Monica, Plaintiffs.**

v.

**Ralph Winton Simpson and Christine Marie Simpson, Defendants.**

**Bankruptcy No. 96–35191WHB. Adversary No. 97–0133.**

United States Bankruptcy Court, W.D. Tennessee, Western Division.

Jan. 29, 1999.

Charles E. Traylor, Memphis, for Plaintiffs.

Steven N. Douglass, Memphis, for Defendants.

## OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION TO AMEND COMPLAINT

WILLIAM H. BROWN, Bankruptcy Judge.

This adversary proceeding was filed in the debtors' joint chapter 7 case, which was filed in this district on November 13, 1996. This is the second bankruptcy case filed by these debtors in the Western District of Tennessee, the first being a Chapter 13 case number 96–28310, which was dismissed. These debtors have filed a third case in this district on September 28, 1998, while this Chapter 7 case and adversary proceeding are pending, again under Chapter 13, case number 98–33438, and this opinion will not address that latest case, in which an objection to confirmation is set for February 17, 1999. The issues addressed in this opinion relate to whether a judgment of nondischargeability entered in a Michigan bankruptcy court precludes a further opportunity for the debtors to dispute the dischargeability of their debt to these plaintiffs.

This Court had previously entered its order, dated March 4, 1998, denying the parties' cross motions for summary judgment and asking counsel for the parties to make a new effort to obtain a more complete record of the various proceedings and hearings in the Michigan bankruptcy court. Several status conferences have been conducted with counsel, who supplemented their summary judgment memoranda with letters and attachments of other documents from Michigan. Copies of transcripts, of what appears to be a complaint in the Michigan court, of a docket sheet from that court and of other documents from the Michigan court have been filed, and counsel have stated in open court that they have been unable to obtain anything else, either from the Michigan court clerk or from attorneys who represented

these parties in Michigan. No objections to any of the document copies have been filed, and this Court understands that counsel have stipulated that the Court may rely upon the uncertified documents that have been filed. There is no dispute of facts presented concerning what occurred in the Michigan court hearings; rather, there is a dispute of law concerning the effect of the Michigan court's judgment and orders. This opinion contains conclusions of law.

## HISTORY OF MICHIGAN JUDGMENT

These debtors filed a voluntary Chapter 11 case in Flint, Michigan on April 24, 1984, and that case subsequently was transferred to the Detroit division and assigned to Bankruptcy Judge Ray Reynolds Graves. These same plaintiffs filed their complaint to determine the dischargeability of a debt, and the bankruptcy case thereafter converted to Chapter 7. Some of the references in transcripts state that the Bankruptcy Court for the Eastern District of Michigan dismissed the adversary proceeding without prejudice due to the plaintiffs' failure to appear at the February 27, 1985 trial, for which defendants and their counsel were present. That court's docket sheet for adversary proceeding 85–0207 indicates that the plaintiffs filed their second complaint to determine the dischargeability of the debt on the same date, February 27. The copy of the Michigan complaint, which appears to be a copy of the first complaint, pleads an unspecified section of 11 U.S.C. § 523(a), false representations and fraud. Whether the second complaint was a mere repeat or referred to other allegations, Judge Graves made a finding that the debt at issue was excepted from discharge for fraud. Notwithstanding this finding and its resulting November 12, 1985 judgment, the debtors apparently received a general discharge on April 11, 1985. An uncertified copy of that discharge was filed with the debtors' memorandum in this adversary proceeding. The docket sheet reflects activity in the adversary proceeding, including a March 12,

1985 examination of the "debtor," the defendants' answer to the complaint, a notice of preliminary hearing/pretrial conference, another debtor examination order, a pretrial order, at least two trial settings, the plaintiffs' motion for default and a hearing on the default motion at the same date as a trial, November 6, 1985, all with Judge Graves presiding. The transcript reveals that the plaintiffs and their attorneys were present and that the defendants' counsel was present in court on November 6, but that the defendants did not appear.[1] Judge Graves granted the plaintiffs' motion for default that day but only after direct, cross, and redirect examination of one of the plaintiffs and after both parties' counsel had discussed with that court the issues of default and damages. An "Order Granting Plaintiffs' Motion for Default and Default Judgment" was entered on November 12 or 13, 1985 in that bankruptcy court. That order is based upon Judge Graves' finding in open court that default was granted due to Mr. and Mrs. Simpson's failure to comply with the two court orders for Rule 2004 examinations and their failure to appear at trial. The order stated that the $107,600 "judgment is based upon fraud on the part of Defendants as defined by 11 U.S.C. Sec. 523, and is therefore not dischargeable in this or any other bankruptcy proceeding." A "Certificate of Judgment for Registration in Another District" was prepared by the Michigan bankruptcy court clerk and filed in the bankruptcy court clerk's office for the Western District of Tennessee on September 19, 1989, and that certificate was assigned this district's miscellaneous number 89–9003. On September 26, 1991, Judge Graves denied the defendants' motion to set aside his default judgment. On May 5, 1996, the Tennessee bankruptcy court, through Chief Judge David S. Kennedy, entered an "Order Denying Defendants' Motion to Vacate Registration of Foreign Decree."

## THIS ADVERSARY PROCEEDING

Rather than file a declaratory judgment or other complaint to determine the effect of

1. There is an allegation in the debtors' memorandum that they had moved to Memphis by that date, had discharged their former Michigan attorney and, by implication, did not know of the trial date. This Court will not need to decide the merits of those allegations, as they amount to a collateral attack upon the Michigan court's judgment, an attack which this Court may not entertain.

Judge Graves' judgment, the plaintiffs filed their complaint in this bankruptcy case, seeking yet another determination that the debt to them was excepted from discharge, and this complaint pleads § 523(a)(4) of the Bankruptcy Code as its basis. The defendants' answer, in part, asserts that this section is not applicable, and the plaintiffs have now moved to amend their complaint to also allege § 523(a)(2). The defendants object to such an amendment. The amendment will be unnecessary, as the issue in this proceeding is not whether the plaintiffs have alleged the correct Code section but whether the defendants are precluded to contest dischargeability. The Court concludes that preclusion does prevent further litigation and that the Michigan judgment of nondischargeability is given effect in this Chapter 7 case.

▆▆▆ Both parties filed their motions for summary judgment in this adversary proceeding pursuant to FED. R. BANKR. P. 7056, and this Court has reconsidered the motions upon both counsels' requests. As stated, this proceeding involves a unique question for this Court: Should a bankruptcy court apply collateral estoppel to another bankruptcy court's default judgment of nondischargeability? A decision depends upon whether the elements of collateral estoppel are sufficiently satisfied in this particular case. It should be noted on a preliminary level that "[j]udgments of bankruptcy courts enjoy the issue preclusive effects of a final judgment by a court of competent jurisdiction." *Lindsey v. Prive Corp.*, 161 F.3d 886, 890 (5th Cir.1998) (citing *Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Burkett v. Shell Oil*, 487 F.2d 1308, 1315 (5th Cir.1973)). The preclusive effect of another federal court's default judgment is a different issue from that presented by default judgments from state courts. "Because the previous judgment in the present case is a federal court judgment, federal standards, rather than state law standards for collateral estoppel, determine whether giving collateral estoppel effect to the [prior default] is appropriate." *Shearer v. Dunkley (In re Dunkley)*, 221 B.R. 207, 212 (Bankr. N.D.Ill.1998) (citations omitted); *see generally*, Honorable Bernice B. Donald & Kenneth J. Cooper, *Collateral Estoppel in Section 523(c) Dischargeability Proceedings: When is a Default Judgment Actually Litigated?* 12 BANKR. DEV. J. 321, 352 (1996) (concluding that the application of collateral estoppel to a prior federal court default judgment typically will depend upon whether the "actually litigated requirement" for such estoppel has been met).

The Sixth Circuit has addressed the issue of whether a bankruptcy court should preclude litigation when a foreign state court has entered a default judgment in *Bay Area Factors, Inc. v. Calvert (In re Calvert)*, 105 F.3d 315 (6th Cir.1997). *Calvert*, relying upon the "full faith and credit" requirements of 28 U.S.C. § 1738 (1994), held that a bankruptcy court must look to the law of the state which rendered the default judgment to determine whether collateral estoppel applies to the state default judgment. *Id.* at 317 (citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985)). *Calvert*'s application of state preclusion law does not control the present issue, because federal courts must apply federal rules of collateral estoppel to default judgments rendered in federal courts.

▆▆▆ *Calvert*, however, did observe that the federal principles of collateral estoppel, as applied by the Sixth Circuit in *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981), are: "(1) the precise issue must have been raised in the prior proceeding, (2) the issue must have been actually litigated, and (3) the determination of the issue must have been necessary to the outcome." *Calvert*, 105 F.3d at 317 n. 2 (citing *Spilman*, 656 F.2d at 228). *See also* NORTON BANKRUPTCY LAW AND PRACTICE 2D, § 47:72 at p. 47–187 (1998) (citing *Spilman* ) ("Under federally developed rules of collateral estoppel, the elements of issue preclusion require the party asserting the preclusion to establish that (1) the issue to be decided by the bankruptcy court is identical to that involved in the prior litigation, (2) the issue was actually litigated in the prior litigation, (3) the issue was determined by a valid and final judgment, (4) the determination of the issue in the prior litigation was essential to the judgment in the earlier action, and (5)

the standard of proof in the prior litigation was at least as high as the standard in the present litigation.").

■■■ *Spilman* also required the bankruptcy court in that case to look to "the entire [default judgment] court['s] record" to determine if the relevant dischargeability issue was "actually litigated and was necessary to" that court's judgment. According to *Spilman,* this Court must look to more than merely Judge Graves' judgment, and I have done so. As stated, the attorneys submitted copies of pleadings, docket sheet, transcripts, discharge, and related orders, as well as the judgment, all of which were agreed to be the most complete record available. From those documents, this Court is able to determine the basis for Judge Graves' judgment and to conclude that these debtors/defendants made appearances and participated substantially in the dischargeability proceedings in Michigan.

Under the federal standards for collateral estoppel, most elements are readily satisfied in the Michigan court's proceedings, where the fraud issue necessary to the prior dischargeability action was raised in those proceedings. Fraud is the same issue which is determinative of the present dischargeability action. Whether the present adversary proceeding relies upon § 523(a)(4) or (a)(2), it is a fraud-based complaint, and fraud is the essential basis for Judge Graves' conclusion that the debt was excepted from discharge. His judgment was a valid and final one, and, although Judge Graves stated that fraud was established by clear and convincing evidence, that standard is higher and inclusive of the lower preponderance of the evidence standard that was later adopted by the Supreme Court for all § 523 dischargeability actions. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Two of the *Spilman* requirements for collateral estoppel, a raising of the same issue and the necessity of that issue to the prior court's judgment, are easily demonstrated. Third and fourth requirements, found in NORTON's treatise, *supra*—the validity and finality of the judgment, and the standard of proof in the prior court's proceeding—are satisfied also.

The only troublesome question is whether the essential issues were "actually litigated" in the Michigan bankruptcy court that rendered the default judgment against these debtors. Because the federal doctrine, unlike some states' laws, requires that a matter be "actually litigated" in order to apply collateral estoppel, courts rarely apply federal rules of collateral estoppel to default judgments. Donald & Cooper, *supra* at 352. However, "[i]n some cases, where the defendant participated substantially in the litigation prior to the trial date, a default judgment may meet the actually litigated test." *Id.* (citations omitted). That is, what is called a default judgment may not in fact be a true default. That is the case here due to these debtors' participation in person and through counsel in Judge Graves' adversary proceedings.

The Eleventh Circuit Court of Appeals has determined that the "actually litigated" requirement could be met by the defendant's substantial participation in the prior action. *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush),* 62 F.3d 1319 (11th Cir.1995). That court affirmed a bankruptcy and district courts' applications of collateral estoppel to a default judgment that was entered in a foreign district court. The court noted: "Ordinarily a default judgment will not support the application of collateral estoppel because '[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.'" *Id.* at 1323 (quoting *Restatement (Second) of Judgments* § 27 cmt. e (1982)). However, the court determined that the "actually litigated" requirement could be satisfied where a "party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort to bring the action to judgment." 62 F.3d at 1325.

The *Bush* defendant had submitted an answer and a counterclaim to the complaint filed in the district court, and the parties began discovery. Defendant's attorney had difficulty contacting him, and the district court permitted the counsel to withdraw and the defendant to proceed *pro se.* Thereafter,

the defendant failed to produce requested documents or appear for noticed depositions though he did respond to plaintiff's motion for FED. R. CIV. P. 37(d) sanctions by averring his absence from the state. He did not attend the pretrial conference where oral argument proceeded on plaintiff's motion for sanctions, and the district court entered a default judgment on the grounds stated in the complaint. *Id.* at 1321–22. The Circuit Court reasoned: "We also are reluctant to allow this debtor a second bite at the apple. Bush actively participated in the prior action over an extended period of time. Subsequently, he engaged in dilatory and deliberately obstructive conduct, and a default judgment, based upon fraud, was entered as a sanction against him. He now attempts, in this bankruptcy proceeding to avoid Section 523 by denying the fraud. Such abuse of the judicial process must not be rewarded by a blind application of the general rule denying collateral estoppel effect to a default judgment." 62 F.3d at 1324. *Bush* followed the Ninth Circuit's opinion which concluded that "substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so" may satisfy the "actually litigated" requirement. *See Bush,* 62 F.3d at 1324–25 (citing *In re Daily,* 47 F.3d 365, 368 (9th Cir.1995)).

Applying *Bush* to this case, the Court notes the Simpsons' substantial participation in and their full and fair opportunity to defend in the Michigan bankruptcy case. Like the *Bush* defendant, the Simpsons filed an answer to the complaint. They had counsel throughout the two proceedings and there is an indication in a transcript that at least one of the debtors gave testimony in an initial creditor's examination. At the date of the default motion and trial on the second adversary proceeding, the Simpsons still were represented by counsel, who was present and stated that he could not explain the defendants' absence. That attorney cross-examined Mrs. Monica and addressed the Michigan bankruptcy court regarding her testimony. On direct, cross, and redirect, Mrs. Monica testified not only to the value of the judgment but also to the issue of fraud. (Trans. Mt. Default J. at 6–19).

The plaintiffs' attorney concluded his direct examination: "I think we have established all of the elements of fraud with regard to both investments." The Simpsons' counsel's cross-examination included questions of the purpose of the plaintiffs' investment, the manner in which the money changed hands, and the parties' then-mutual attorney. At one point in the cross-examination, the plaintiff's attorney objected: "This goes beyond the line of questioning as far as damages. We are going to the establishment of fraud." But Judge Graves overruled the objection: "I think the area was opened on that in the direct examination. I will allow it." (*Id.* at 17). Plaintiffs' counsel referred to Mrs. Monica's testimony at the motion and trial date, as well as to Mr. Simpson's testimony at the initial examination—apparently a Bankruptcy Rule 2004 examination— (*id.* at 22), and concluded to the Court: "I think that that is clearly a fraud under Section 523. It certainly is obvious." (*Id.* at 20). The defendants' own attorney admitted that the evidence established some fraud, apparently attempting to hold down the amount of debt that would be nondischargeable: "We don't show—there has been no evidence to really show any active fraud on the $95,000. I think there has been some evidence on the $12,000 for the purchase of the cattle. But as far as the $95,000, there doesn't seem to me to be sufficient evidence for the Plaintiffs to bear the burden on that." (*Id.* at 23–24). Judge Graves concluded that hearing with the comment that if Mrs. Monica's testimony were given in a trial at which the Simpsons did not appear, "there is . . . a clear and convincing case for fraud." (*Id.* at 27). At the beginning of that hearing, the attorney representing the Simpsons, in response to Judge Graves' question about the harshness of default, said: "I think as far as entering a default, as far as prohibiting the Defendants from presenting any evidence, I don't believe that would be too harsh. However, I think the Court should take testimony as to the amount of the damages, if any." (*Id.* at 6). This was an admission that the debt would be excepted from discharge, provided that any debt were established. Judge Graves proceeded to take proof of damages, in the

form of Mrs. Monica's testimony, and he awarded a monetary judgment of $107,000, adding that it was excepted from discharge on the basis of fraud.

It is now the Simpsons' argument, unsupported by proof, that they had discharged their Michigan attorney and knew nothing about the activity in the proceeding, but that argument comes too late. The Simpsons' counsel also avers that the "Debtors/Defendants' subsequent efforts to have the adversary proceeding reopened to allow them to actually litigate the issues were denied by the Bankruptcy Court in Michigan." (Def.'s Mem. Supp. Summ. J. at 3). The Court notes that the Michigan court denied no one the opportunity to actually litigate the issues. Rather, the defendants failed to appear and fully defend. Only the Simpsons kept themselves from defending the complaint in the second adversary proceeding, from appearing at the scheduled Rule 2004 examinations or at the noticed trial. At the first trial, set in the first adversary proceeding between the same plaintiffs and defendants, the Simpsons appeared, and they would have heard Judge Graves, who presided over the second adversary proceeding as well, dismiss the first complaint for the plaintiffs' failure to appear at that scheduled trial. Therefore, the Simpsons were noticed of the potential effect of their failure to attend the second trial. In contrast to the first action, in which the plaintiffs' counsel was not prepared to proceed with the trial, at the second trial defendants' attorney was prepared and represented them in examination of one plaintiff and in argument on the issue of fraud. The debtors may not now collaterally attack Judge Graves' judgment by saying they were in the dark about the second adversary proceeding: If they were in the dark, it would be the result of their hands on the light switch. *Bush* noted that preclusion promotes judicial economy and that the decision whether to apply collateral estoppel is within the "sound discretion of the trial court." *Id.* at 1325 n. 8. This Court concludes that the judgment against Mr. and Mrs. Simpson was not a true default judgment but rather was one in which the parties were represented by counsel and where the trial court heard testimony on the issue of fraud as well as damages.

This Court concludes that the Simpsons had a full and fair opportunity to litigate the issue of fraud and that, through their pleadings, appearances and their counsel, they participated substantially. Thus, under *Spilman* and *Bush* the parties actually litigated the issues and the federally-developed rules of collateral estoppel have been satisfied. The concept of collateral estoppel prevents this Court from giving Mr. and Mrs. Simpson yet a third "bite at the apple." *Bush*, 62 F.3d at 1324.

This Court, in its earlier Order denying the cross motions for summary judgment, directed the parties to present evidence regarding the issues of whether the defendants had discharged their attorney before he represented them at the second adversary trial and whether the defendants did not receive service of process in the second adversary case, as alleged by defendants in their memorandum in support of their motion for summary judgment. No such evidence has been presented to the Court, and without more than mere allegations in a pleading, I cannot assume that the counsel who represented the Simpsons on the second trial date did not have authority to represent them. The Michigan bankruptcy court and the plaintiffs and their counsel obviously believed the defendants' counsel had authority to represent them and did not mention insufficient service of process. Their attorney gave no indication of a lack of his authority. There is nothing in the transcripts or other documents filed with this Court to indicate a lack of the Simpsons' attorney's authority or a failure of service. In fact, the docket sheet indicates a return of service on both of the Simpsons and the filing of an answer on their behalf. Such issues, moreover, are also collateral attacks on the validity of the Michigan court's judgment. These are matters that should have been raised in that court or on appeal. It is significant that the Simpsons filed a motion through another Michigan attorney asking Judge Graves to set aside the default judgment, clearly an opportunity for them to present all arguments in their favor. Judge Graves denied that motion. If the Simpsons now have a dispute with their former attorney, that is not a basis for this

Court to give them relief from another bankruptcy court's judgment.

■ A related issue to the preclusion is the effect of the Michigan court's judgment of nondischargeability in a subsequent bankruptcy case. As mentioned in this Court's earlier Order, there is some guidance in the Bankruptcy Code concerning the permanent nondischargeability of certain types of debts. Section 523(b) provides that "a debt excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, ... is dischargeable in a [subsequent] case." The negative implication of this provision is that debts excepted in one case under other subsections of § 523(a) are not dischargeable in a subsequent case, at least one under Chapter 7 such as the present case. Appreciating that negative implications from the Code should be entertained cautiously, nevertheless, there is strong support for that concept. Both the NORTON and COLLIER treatises state that the implication of Bankruptcy Code §§ 523(a)(10) and 523(b) "is that debts excepted from discharge under these other sections [§ 523(a)(2), (4)-(18) ] are forever barred from discharge in subsequent cases." 3 NORTON BANKRUPTCY LAW AND PRACTICE 2D, § 47:57 at 47–155 (1998); *accord* 4 COLLIER ON BANKRUPTCY 15TH ED. REV. ¶ 523.25 (1998). To conclude otherwise would not comport with common sense: Where fraud was found by one bankruptcy judge, it would undercut the purpose of fraud-based exceptions from discharge to permit a debtor guilty of that fraud to simply file another Chapter 7 bankruptcy and discharge that debt. The rationale for a permanent exception from discharge is discussed clearly in an opinion from another bankruptcy court, *Royal American Oil and Gas Co. v. Szafranski (In re Szafranski)*, 147 B.R. 976 (Bankr. N.D.Okl.1992), and this Court adopts the reasoning of Judge Micky Dan Wilson in that opinion concerning the effect of § 523(b). *See id.* at 979–89 (concluding that res judicata effect must be given to exceptions to dis-

charge included within §§ 523(b), (c)). This Court concludes, therefore, that the judgment from Judge Graves holding that this debt was excepted from discharge as a result of fraud precludes the debtors from discharging the same debt in this Chapter 7 case.

As noted previously, the only ripe issue before the Court concerns the effect of Judge Graves' judgment in this case, and the effect of that judgment in the subsequent Chapter 13 case, number 98–33438, is not before the Court at this time. It is certainly true that a fraud-based debt that is not dischargeable in Chapter 7 may be dischargeable in Chapter 13. *See* 11 U.S.C. § 1328(a). The Court will wait until it is presented in the subsequent Chapter 13 case to decide whether these debtors may pay and/or discharge this debt in that case.[2]

The defendants' counsel raises another issue in his opposition to the plaintiffs' motion to amend their complaint in this Court to now plead § 523(a)(2). In their original complaint, they alleged that this debt was excepted from discharge under § 523(a)(4), an apparent reference to fraud in a fiduciary capacity. It is unnecessary for the plaintiffs to now amend, as this Court does not need to determine why the debt was excepted from discharge, only that it was. Judge Graves is the one who found evidence of fraud and his finding was that the debt is excepted from discharge forever due to fraud. Neither the plaintiffs' complaint nor the judgment referred to any subsection of § 523. This Court is limiting its conclusion to the effect of that judgment in this Chapter 7 case: The debtors are precluded from discharging the same fraud-based debt in this case that was excepted from discharge in their Michigan Chapter 7 case.[3]

■ Finally, the debtors allege that they are entitled to relief from the plaintiffs' continuing efforts to collect the nondischargeable judgment, on the basis that the Ten-

---

**2.** A hearing is set on February 17, 1999, in the Chapter 13 case on these plaintiffs/creditors' objection to confirmation.

**3.** The Court notes, in an attempt to answer all relevant questions and although it is not specifically raised as a basis for relief to the debtors,

that it is also not within this Court's authority to determine why the debtors received a general discharge while the adversary proceedings were pending in the Michigan Court. That, too, is a matter that should have been raised in that court.

nessee statute of limitations applies through application of FED. R. BANKR. P. 7069. It is argued that Tennessee's applicable statute places a ten-year limit on actions on judgments from courts of record of this or other states. TENN. CODE ANNOT. § 28–3–110(2). The plaintiffs argue, in contrast, that under Michigan state law each new payment recommences the running of the ten-year statute of limitations, and the plaintiffs' attorney states in a pleading that the defendants made a voluntary payment as recently as November 17, 1995 that would renew the ten-year period. Therefore, there are interesting questions presented, including: Does Tennessee's or Michigan's law control? Did Judge Graves' September 26, 1991 order denying the debtors' motion to set aside the judgment, in which he stated that the original judgment was "affirmed," act as a renewal of that judgment or begin a new ten-year collection period? Notwithstanding an interest in such questions, this Court again is not in a proper posture to decide the limitations' issues. This Court should not decide issues that do not present a present case or controversy. U.S. CONST. art. III, § 2. The issue raised in this complaint is whether the debt is excepted from discharge: It is. The issue of collection is a separate one from dischargeability. A debt, such as this one, may be permanently non-dischargeable in Chapter 7 bankruptcies while being noncollectible for various reasons. In this case, the issue of collection is not ripe because no collection effort is being made currently as a result of the automatic stay in both this case and in the subsequent Chapter 13 case. Moreover, should the debtors succeed in obtaining a confirmed plan in that Chapter 13, collection outside of bankruptcy may be moot. Should the debtors wish a determination of the staleness of the judgment, the appropriate vehicle would include either an objection to allowance of the claim in their Chapter 13 case, a complaint in the appropriate Tennessee or Michigan state court for declaratory judgment, a complaint in the Michigan bankruptcy court for such a declaratory judgment, or a separate declaratory judgment complaint in this district's bankruptcy court. The latter was placed last on purpose, as this bankruptcy court may not be the most appropriate venue, especially in view of Chief Judge Kennedy's May 28, 1996 order, miscellaneous number 96–8001, in which he abstained from deciding the staleness issue in deference to the Michigan court's expertise. Admittedly, Judge Kennedy was presented with the viability of the judgment under Michigan law and the debtors are now attacking the staleness of the judgment in light of Tennessee's ten-year statute. The Court will leave it to counsel for the debtors to determine the most appropriate venue for filing a declaratory judgment complaint, or other pleadings, but at this point in time the Court will decline to rule upon the effect of Tennessee's limitation on collection.

Based upon these conclusions of law, **IT IS THEREFORE ORDERED** that

1. The plaintiffs' motion for summary judgment is **GRANTED** on the basis of both collateral estoppel and res judicata, and the judgment of nondischargeability from the Michigan bankruptcy court is given preclusive effect in this Chapter 7 case, with the result that the debt is excepted from discharge in this case.

2. The plaintiffs' motion to amend their complaint is **DENIED** as unnecessary, since the debt was excepted from discharge by the Michigan bankruptcy court's judgment on the basis of fraud, with no necessity for this Court to fix a specific subsection of 11 U.S.C. § 523.

3. The Court declines to decide in this adversary proceeding the effect of Michigan's or Tennessee's limitations on collection of this judgment.

4. The Court does not decide any issues concerning the effect of the Michigan judgment in the debtors' subsequent Chapter 13 case, number 98–33438; rather, any Chapter 13 issues are reserved for determination in the Chapter 13 case.