**In re Traci Lynn GILSON, Debtor.**

**Federal Insurance Company, Plaintiff,**

v.

**Traci Lynn Gilson, Defendant.**

**Bankruptcy No. 97–11256–RGM.**
**Adversary No. 97–1163.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

June 27, 2000.

Sammy S. Knight, Fairfax, Virginia, for debtor.

Bernard Fensterwald, III, Fensterwald & Alcorn PC, Arlington, Virginia, for plaintiff.

## MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

The question presented in this case is whether the debtor is precluded from further litigating the dischargeability of the plaintiff's claim in the bankruptcy court after entry of a post-petition sanction judgment in a United States District Court after the bankruptcy court granted relief from the automatic stay to litigate the matter in the district court. Neither the underlying factual issues nor damages were actually litigated in the district court.

### Procedural History

Traci Lynn Gilson was employed by NY-MEX as the secretary to Mark Seetin, a senior vice president. She made all of his travel arrangements and was authorized to use the corporate American Express card for this purpose. During the course of her two-and-a-half-year employment, she also used the credit card for her personal benefit. Paolo Verrone, who owned the travel agency used by Ms. Gilson to make travel arrangements, cooperated with Ms. Gilson. Upon discovery of the unauthorized use in 1996, Ms. Gilson was terminated and suit was filed in the United States District Court for the Southern District of New York against both Ms. Gilson and Mr. Verrone. The complaint contained four counts: fraud, conversion, breach of fiduciary duty, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1961 *et seq.* Mr. Verrone did not respond to the complaint. Ms. Gilson filed an answer denying the critical allegations. On February 21, 1997, before any substantial effort was expended in the district court, Ms. Gilson filed a voluntary petition in bankruptcy under chapter 7 of the Bankruptcy Code in this court.

Federal Insurance Company ("FIC"), successor to NYMEX, filed a complaint in this court on May 27, 1997, alleging that its claim was not dischargeable. Ms. Gilson filed an answer. Discovery was propounded by FIC, but Ms. Gilson did not respond to it. FIC filed a motion to compel discovery on October 1, 1997. The matter came on for a hearing on October 31, 1997. The discovery motion was resolved by terminating the automatic stay so that the district court case could be fully litigated against both defendants and staying any further proceedings in this court. The order was entered on December 12, 1997.

Upon returning to the district court, FIC propounded discovery to Ms. Gilson to which she did not respond. On February 26, 1998, the district court entered a sanction default against Ms. Gilson for failure to respond to the discovery and referred the matter to a magistrate judge to

determine damages.[1] The magistrate judge gave both Mr. Verrone and Ms. Gilson an opportunity to submit evidence and to respond to the evidence submitted by FIC as to damages. Mr. Verrone did not respond. Ms. Gilson, through her attorney, replied. She stated she was the subject of a criminal investigation in the District of Columbia as a result of the transactions in issue in the case and asserted her Fifth Amendment privilege against self-incrimination. She did not submit any evidence or respond to the evidence submitted by FIC. The inevitable occurred. The magistrate judge issued his Report and Recommendation in which he found liability under the four counts and actual damages in the amount of $474,713.76 on each count. On the conversion and breach of fiduciary duty counts, he recommended punitive damages in the amount of $100,000.00 for each count. On the RICO count, he recommended treble damages based on the actual damages only, a total of $1,124,141.28. Mr. Verrone, while not having previously participated in the case, objected to the Report and Recommendation. Ms. Gilson did not. The district court heard Mr. Verrone's objections and overruled them. In light of the fact that the multiple counts arose from the same transaction, the district court held that FIC was entitled to only one satisfaction and entered judgement in the amount of $1,124,141.28 against Mr. Verrone and Ms. Gilson, jointly and severally.

FIC has now returned to this bankruptcy court. It requested and received leave to file an amended complaint in this adversary proceeding to conform to the district court complaint. The amended complaint was filed and served. Ms. Gilson did not respond to the amended complaint. FIC filed a motion seeking a default judgment or, in the alternative, summary judgment based on the district court judgment. Ms. Gilson has not responded to the motion.

### *Discussion*

### *I. Default*

The debtor is in default for having failed to respond to the amended complaint. F.R.Bankr.P. 7055, which incorporates F.R.Civ.P. 55(a). Consequently, the case is ripe for entry of the debtor's default by the clerk. However, the amount of damages is not a sum certain or a sum which can by computation be made certain. Therefore, the clerk cannot enter a judgment by default and a further hearing is required before the court. F.R.Civ.P. 55(b). *Frame v. S–H, Inc.,* 967 F.2d 194, 204 (5th Cir., 1992); *United States v. DiMucci,* 879 F.2d 1488, 1497–98 (7th Cir., 1989).

### *II. Collateral Estoppel*

### *A. Elements of Collateral Estoppel*

This is not the relief FIC would like. It would like to avoid a second damages hearing, and the possibility of losing the benefit of the treble damages. To this end, FIC also moved for summary judgment based on the judgment rendered by the district court. FIC focuses on collateral estoppel[2] to avoid repeating the proof hearing, assuming that *res judicata*[3] is not available. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

It is necessary to be sensitive to whose law of collateral estoppel is being applied and the particular elements in that jurisdiction when reviewing reported opinions. The law of collateral estoppel, although similar throughout the United States, is not identical. A judgment that may give rise to collateral estoppel in one state may not give rise to collateral estoppel in another. For example, a default

---

1. The District Court entered a default against Mr. Verrone on May 26, 1998, because of his failure to respond to the complaint and referred the matter to the same magistrate judge to determine damages.

2. Now more often called issue preclusion.

3. Now more often called claim preclusion.

judgment is not generally entitled to collateral estoppel effect. RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. *e.* This rule is not universal. In *Bend v. Eadie (In re Eadie),* 51 B.R. 890, 894 (Bankr.E.D.Mich., 1985), the prior judgment arose in a Michigan state court. The bankruptcy court applied Michigan's doctrine of collateral estoppel and found that a default judgment entered by the Michigan state court would be granted collateral estoppel in Michigan state courts as to all issues that were necessary to support the default judgment. *But see Wood v. Dealers Fin. Services, Inc.,* 199 B.R. 25 (E.D.Mich., 1996); *Montgomery v. Kurtz (In re Kurtz),* 170 B.R. 596 (Bankr.E.D.Mich., 1994). *See also TransDulles Ctr., Inc. v. Sharma,* 252 Va. 20, 472 S.E.2d 274 (1996).

■ It is also necessary to be sensitive to the basis of the obligation to apply the law of another judicial system. Collateral estoppel is given effect between states by virtue of the Full Faith and Credit Clause of the United States Constitution. U.S. CONST. ART. IV, § 1. Federal courts are not bound by the Full Faith and Credit Clause. Federal courts are bound by 28 U.S.C. § 1738, which provides a statutory full faith and credit for federal courts to follow when presented with a state court judgment.[4] *In re Genesys Data Technologies, Inc.,* 204 F.3d 124 (4th Cir., 2000). As among the federal courts, however, neither the Constitution nor 28 U.S.C. § 1738 provide a basis for decision. Federal decisions provide the elements of collateral estoppel to be given by one federal court to the judgment of another federal court. *Cf. Marrese v. American Academy of Or-*

*thopaedic Surgeons,* 470 U.S. 373, 388, 105 S.Ct. 1327, 1336, 84 L.Ed.2d 274 (1985); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 467, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982).

■ In the present case, the judgment presented to the court is a judgment of the United States District Court for the Southern District of New York. Consequently, the elements of federal collateral estoppel are applicable. Those elements are: (1) the issue sought to be precluded was the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a valid and final judgment; and (4) the determination was essential to the prior judgment. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Combs v. Richardson,* 838 F.2d 112 (4th Cir., 1988).

■ In this case, there is no question that all but one element has been satisfied. The issues are identical. The creditor amended its complaint in the bankruptcy court to conform to the complaint filed in the district court.[5] However, the issues were not actually litigated in the district court. The debtor, although having initially filed an answer, declined to participate in the case after the automatic stay was terminated by the bankruptcy court. Her stated reason for not participating was the protection of her Fifth Amendment rights. As a result of her default in responding to discovery, a sanction was imposed. A default was entered against her. The magistrate judge thereafter determined the damages, again without her participation.

---

4. Federal courts follow a two step process in determining whether § 1738 should apply in a particular situation. A federal court must first look to state law to determine the preclusive effect of the state court judgment. "If state law would not bar relitigation of an issue or claim decided in the earlier proceeding, then the inquiry ends." *In re Genesys Data Technologies, Inc.,* 204 F.3d 124, 128 (4th Cir., 2000). "If state law would afford the judgment preclusive effect, however, then a federal court must engage in a second step—it must determine if Congress created

an exception to § 1738." *Id.* at 128. If an exception to § 1738 applies, a federal court can "refuse to give a judgment the preclusive effect to which it is entitled under state law." *Id.* at 128. *Genesys Data Technologies* involved the application of *res judicata* to an objection to a proof of claim. It was not a dischargeability case.

5. The amended complaint did not materially change the nature of the original allegations.

The missing element of actual litigation precludes the use of collateral estoppel. *Cromwell v. County of Sac*, 94 U.S. 351, 356–57, 24 L.Ed. 195 (1876).

### B. The Actually Litigated Requirement

■■■■ FIC argues that the debtor had a full and fair opportunity to litigate the matters in the district court and that this full and fair opportunity meets the "actually litigated" requirement. This argument cannot be accepted. Every defendant has a full and fair opportunity to defend himself. If he does not, he will probably have been denied his due process rights under the Fourteenth Amendment. A full and fair opportunity to defend oneself includes, among other things, the opportunity to file an answer, present witnesses and cross-examine witnesses. While every litigant has these rights, many do not exercise them, especially in collection cases. The issue in these cases is not so much whether the debt is owed but whether the creditor can gain access to the court's collection remedies such as garnishment and levy.

■■■■ The creditor's argument simply proves too much. The argument eliminates one of the critical differences between *res judicata* and collateral estoppel. *Res judicata* bars all claims that were or might have been presented and all defenses that were or might have been presented as though they had been actually litigated. Collateral estoppel only bars issues actually litigated. To change the collateral estoppel "actually litigated" requirement to a mere "opportunity to fully and fairly participate" requirement would change a critical element of collateral estoppel and transform it substantially into *res judicata*. To preclude relitigation of particular issues which a party had a full and fair opportunity to litigate but which were not actually litigated would, in dischargeability cases, block "unexplored paths that may lead to truth." *Felsen*, 442 U.S. at 132, 99 S.Ct. at 2210. This was one of the important reasons why the application of *res judicata* was rejected by the Supreme Court in bankruptcy dischargeability cases in *Felsen* and why the "actually litigated" requirement of collateral estoppel ought not be eroded.

FIC also argues that actually litigated may be something less than really actually litigated. It argues that the requirement may be met where the debtor substantially participated in the litigation but suffered a default at some later point, particularly if bad faith were involved. The creditor is not without support for this position. The foundations of this argument are found in *Federal Deposit Ins. Corp. v. Daily (In re Daily)*, 47 F.3d 365 (9th Cir., 1995) and *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319 (11th Cir., 1995).

*Daily*, at first blush, looks strikingly similar to this case. Daily filed a voluntary petition in bankruptcy in the United States Bankruptcy Court for the District of Hawaii. The Federal Deposit Insurance Corporation ("FDIC") filed a complaint objecting to the dischargeability of the debt owed to it. FDIC also filed a civil RICO complaint in the United States District Court for the District of Kansas but did not include the debtor as a defendant because of the automatic stay. *See* 11 U.S.C. § 362(a). FDIC sought relief from the automatic stay to join the debtor as a defendant in the Kansas litigation and to stay further proceedings in the bankruptcy court on the dischargeability complaint. FDIC and the debtor, a chapter 11 debtor in possession, entered into a stipulation that provided that any money judgment awarded against the debtor in the Kansas litigation would be an allowed claim in the chapter 11 proceeding and that the Kansas case would "be binding on the parties." *Daily*, 47 F.3d at 367. The motion for relief from the stay was granted. The debtor was joined as a defendant in the Kansas suit. FDIC propounded discovery requests. Nothing was forthcoming. After almost two years, FDIC sought relief under F.R.Civ.P. 37. The district court

found the debtor's failure to provide discovery was "the result of a deliberate, dilatory course of conduct" and that it was part of a "strategy of delay and evasiveness" which had "significantly prejudiced the plaintiffs." *Daily,* 47 F.3d at 367. *See also Federal Deposit Ins. Corp. v. Renda,* 126 F.R.D. 70, 72–73 (D.Kan., 1989). The court sanctioned Daily by ordering all allegations of the complaint be deemed admitted and entered a default judgment in favor of FDIC for treble damages.

The case then returned to the Hawaii bankruptcy court where FDIC moved for summary judgment. The debtor defended the motion asserting that the issues had not been actually litigated. The bankruptcy court granted the motion for summary judgment on two grounds. First, it noted that the parties had stipulated that the adjudication in the Kansas case would control in the dischargeability case. Second, the court stated that:

> A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication. In such a case the "actual litigation" requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so.

*Daily,* 47 F.3d at 368 [footnote omitted].

*Bush* was decided by the Eleventh Circuit six months after *Daily* and reached a similar result. In *Bush,* Balfour Beatty Bahamas, Ltd. ("Balfour") filed a five-count complaint in the United States District for the Southern District of Florida against Bush and others. Only one count, stating a claim for fraud, involved Bush. Bush filed an answer and a counterclaim which placed the fraud allegations in issue. Initially, Bush participated in the proceeding through discovery and exchanging exhibits. After Bush's counsel withdrew because of difficulty contacting Bush, Bush failed to comply with discovery rules and court orders. He failed to produce trial exhibits. He failed to appear for depositions. He failed to produce documents that had been requested. Finally, he failed to appear at a pre-trial conference. The district court sanctioned Bush by entering a judgment by default on the grounds stated in the complaint, fraud. Ten months later, Bush filed a voluntary petition pursuant to chapter 7 of the Bankruptcy Code. Balfour filed a dischargeability complaint and a motion for summary judgment based on the prior judgment obtained. Bush, like Daily, defended the motion for summary judgment on the ground that the issue of fraud had not been actually litigated. The motion for summary judgment was granted. On appeal, the court of appeals acknowledged that an element of collateral estoppel is that the issue be actually litigated in the prior action. *Bush,* 62 F.3d at 1322. The Eleventh Circuit reviewed the then recent opinion of *Daily* from the Ninth Circuit and found that Bush, like Daily, did not simply give up at the outset of the litigation. He actively participated in it for a period of time and then refused to participate further. The court held:

> Where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort to bring the action to judgment, it is not an abuse of discretion for a district court to apply the doctrine of collateral estoppel to prevent further litigation of the issues resolved by the default judgment in the prior action.

*Bush,* 62 F.3d at 1325 [footnote omitted].

■ The present case points to some of the difficulties of *Daily, Bush* and their progeny. How much obstreperous or bad faith conduct precludes subsequent dischargeability litigation? Is the standard objective misconduct or subjective intent?

While it is true that Ms. Gilson was properly before the district court, had retained counsel and filed an answer, she did not engage in any other significant activity. While she did not respond to discovery and was properly sanctioned for her failure, she did not otherwise hinder or delay the judicial process. She did not create unnecessary hurdles or create needless expenses. She did require the creditor to properly follow court procedures. Her expressed motivation was legitimate. She asserted her Fifth Amendment privilege not to incriminate herself. Her choice effectively precluded her participation in the discovery process. She made the decision not to participate in the civil proceeding on advice of counsel. It was a fully informed and conscious choice. The debtor had an opportunity to participate had she so desired; but, weighing the potential detriments to participation against the potential benefits, decided that the likely default judgment was preferable to further participation in the process. Ms. Gilson's conduct in this case does not rise to the level of either Bush's or Daily's conduct.

There are many reasons why defendants choose not to proceed in civil litigation. All litigants are aware when they make that decision that a default judgment will probably be entered against them. It is, however, difficult to discern when "participation" becomes "substantial participation" and would satisfy an "actually litigated" requirement. It is also difficult, especially if the defendant does not participate, to determine the defendant's motive. It is difficult to know whether the defendant's actions in the litigation were proper responses to a complaint and the search for truth, or were merely setting up additional hurdles to delay what the defendant knew would inevitably occur. It may be that a defendant engages in significant discovery only to find that all of the facts are not what he thought they were originally or that the plaintiff's case is much stronger than he had originally understood. These actions can be undertaken in good faith. They must comply with

F.R.Civ.P. 11. However, at some point, he may determine that he will inevitably lose or that further effort is not worth the costs involved. At that point, he may well become in default of his discovery obligations with the inevitable result following. Merely examining the record of the litigation may not be sufficient to determine the subjective intent of a defendant. Must a defendant, at the time of a default hearing, prove that his prior conduct was not in bad faith so that he will not be precluded from contesting the dischargeability of the default judgment in a subsequent hypothetical bankruptcy? Must a plaintiff seek to prove such bad faith at a default hearing to protect the default judgment in a subsequent hypothetical bankruptcy? An individual's intent may well not be expressed and must be inferred from his conduct or the circumstances. Applying collateral estoppel based on subjective intent does not necessarily permit the discovery of the truth of the underlying matter; the alleged nondischargeable debt, particularly where the defendant because of his default is not present.

Moreover, even though the sanction judgments will be given *res judicata* effect in other non-bankruptcy litigation, the effect of the *Daily* and *Bush* holdings is to enlarge the ambit of § 523 without a hearing on the merits of the § 523 complaint. Nowhere in § 523 is failure to comply with discovery listed as a nondischargeable obligation. An obligation is not dischargeable because, for example, the original obligation was incurred fraudulently, not because a debtor was recalcitrant in admitting his obligation or in honoring it. Courts have the ability to resolve discovery and other pleading abuses promptly and effectively without adding a not always obvious potential nondischargeability issue to a future hypothetical bankruptcy. This is not necessary and impinges on the carefully drafted and balanced Bankruptcy Code. In *Daily, Bush,* and this case, the defendants suffered the ultimate sanction, a judgment. While outside bankruptcy,

the judgment is *res judicata* for all other purposes, bankruptcy presents a different situation.

### III. Res Judicata

### A. Application in Dischargeability Cases to Pre-petition Judgements

While FIC argues collateral estoppel for the success of its motion for summary judgment, the doctrine of *res judicata* in bankruptcy dischargeability cases—which is what FIC really wants to invoke—should be reviewed. *Res judicata* requires a valid and final judgment rendered on the merits in a prior proceeding between the same parties or their privies on the same claim. *Hughes v. United States*, 4 Wall. 232, 71 U.S. 232, 237, 18 L.Ed. 303 (1866). The term "on the merits" is a term of art and does not necessarily mean that the issues were actually litigated. "A judgment on the merits is one which is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction or form." *Fairmont Aluminum Co. v. Commissioner of Internal Revenue Service*, 222 F.2d 622, 625 (4th Cir., 1955). *See also Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 943 (7th Cir., 1981); 18 Moore's Federal Practice ¶ 131.30[3][a] (3rd ed., 2000). The Restatement (Second) on Judgments eschews the use of the term "on the merits." It states:

> It is frequently said that a valid and final personal judgment for the defendant will bar another action on the same claim only if the judgment is rendered "on the merits." The prototype case continues to be one in which the merits of the claim are in fact adjudicated against the plaintiff after trial on the substantive issues. Increasingly, however, by statute, rule, or court decision, judgments not passing directly on the substance of the claim have come to operate as a bar. Although such judg-

ments are often described as "on the merits" or as "operating as an adjudication on the merits," that terminology is not used here in the statement of the general rule because of its possibly misleading connotations.

Restatement (Second) on Judgments, § 19, cmt. *a*. The "on the merits" element of *res judicata* is substantially different—and broader—than the "actually litigated" element of collateral estoppel. In this case, even though the issues were not actually litigated in the district court and, therefore, prevent the application of the doctrine of collateral estoppel, there was an adjudication on the merits that would permit the application of the doctrine of *res judicata* if not prohibited in this bankruptcy dischargeability case.

The principal Supreme Court decision on *res judicata* in bankruptcy dischargeability cases is *Brown v. Felsen, supra*. In *Felsen*, the Supreme Court was faced with the *res judicata* effect of a state court judgment in a subsequent bankruptcy dischargeability action. Brown guaranteed a bank loan to Felsen and Felsen's car dealership. Upon default, the bank brought a collection suit against the makers and Brown, the guarantor. Brown filed an answer to the suit and a cross-claim against Felsen and his dealership. The answer and cross-claim alleged that Felsen and the dealership induced Brown to sign the guarantee by misrepresentation and nondisclosure of material facts. The suit was settled by a stipulation that provided for a joint and several judgment in favor of the bank against all three parties and a judgment in favor of Brown against Felsen. Neither the stipulation nor the resulting judgment indicated the basis for the judgment in favor of Brown against Felsen.[6] Felsen filed bankruptcy. Brown objected to the dischargeability of Felsen's judgment under §§ 17a(2) and a(4) of the

---

6. In addition to the fraud action, Brown also, presumably, was entitled to indemnity from the principal, Felsen, on Brown's guarantee.

The indemnity claim is a simple contract claim.

Bankruptcy Act of 1898, willful and malicious conversion of property of another and fraud, respectively. Felsen moved for summary judgment contending that because the state court judgment did not result in a finding of fraud, *res judicata* barred relitigation of the nature of the obligation. *Felsen*, 442 U.S. at 129, 99 S.Ct. at 2208. The Supreme Court held that "the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of [Felsen's] debt." *Id.*, 442 U.S. at 139, 99 S.Ct. at 2213.

 The Supreme Court thoroughly discussed the application of *res judicata* and its limitations. It stated:

Res judicata ensures the finality of decisions. Under res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940); 1B J. Moore, Federal Practice ¶ 0.405[1] (2d ed.1974). Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.

. . .

Because res judicata may govern grounds and defenses not previously litigated, however, it blockades unexplored paths that may lead to truth. For the sake of repose, res judicata shields the fraud and the cheat as well as the honest person. It therefore is to be invoked only after careful inquiry. Petitioner contends, and we agree, that here careful inquiry reveals that neither the interests served by res judicata, the process

of orderly adjudication in state courts, nor the policies of the Bankruptcy Act would be well served by foreclosing petitioner from submitting additional evidence to prove his case.

*Id.* 442 U.S. at 131–32, 99 S.Ct. at 2209–10.

In balancing the competing principles, the Supreme Court considered the unique posture created by the filing of a bankruptcy petition. Before a petition is filed, the possibility of bankruptcy is merely hypothetical. The debtor cannot raise the defense of a discharge in bankruptcy in the original state court proceeding. There is no bankruptcy discharge at that time. The creditor is not required to overcome the hypothetical defense. "Considerations material to discharge are irrelevant to the ordinary collection proceeding." *Id.*, 442 U.S. at 134, 99 S.Ct. at 2211. If more than one cause of action supports recovery, the creditor will most likely assert the easiest to prove. If a loan is obtained through fraud, it is usually simpler to sue on the note than on the fraud. A debtor faced with a two count complaint, one on the note and the second on the fraud, may feel that there was no fraud, but recognize that he owes the money. Defense, ultimately, is fruitless. He may let the matter go by default, especially if the damages sought in both counts are the same. Since bankruptcy is only a hypothetical possibility, the creditor may not wish to undertake a more difficult suit when a simpler suit with a more predictable result is available. The debtor may not wish to defend when the ultimate financial outcome is certain. The matter is resolved promptly with minimal expense. Court dockets are not needlessly filled with allegations or defenses that involve only hypothetical future actions. Neither the presentment of a fraud count nor the lack of defense show that fraud was committed, or that the debtor was innocent of any fraud alleged. While the decision to allege fraud or to let the complaint go by default may have ramifications at state law for other possible suits or remedies because of the application of the

doctrine of *res judicata*, those ramifications are not relevant to the bankruptcy determination of dischargeability. "The rule proposed by [Felsen] would force an otherwise unwilling party to try § 17 questions to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future. In many cases, such litigation would prove, in the end, to have been entirely unnecessary." *Id.*, 442 U.S. at 135, 99 S.Ct. at 2211.

The Court also noted that in 1970 Congress expressly changed the manner in which dischargeability of a debt was determined. Before 1970, the bankruptcy court determined whether the debtor received a discharge, but state courts determined the dischargeability of particular debts. In 1970, Congress amended the Bankruptcy Act to require that creditors apply to the bankruptcy court for adjudication of certain dischargeability questions, including those allegedly arising by fraud. *Id.*, 442 U.S. at 129, 99 S.Ct. at 2208. Giving full *res judicata* effect to a pre-petition state court judgment would defeat this very purpose. *Id.*, 442 U.S. at 135, 99 S.Ct. at 2211. The purpose of the amendment was to prevent post-bankruptcy abuse by creditors who sought post-discharge enforcement of pre-bankruptcy debts in the hopes that the debtor would not defend the suit, raise the bankruptcy discharge or could not afford proper legal representation.[7] *Id.* Centralizing the dischargeability litigation in the bankruptcy court also permitted a single forum, the bankruptcy courts, to develop the expertise to resolve these mat-ters consistently. *Id.*, 442 U.S. at 136, 99 S.Ct. at 2211 n. 7.

The Supreme Court pointed out that the elements of a state law fraud or other action may not be the same as the elements of nondischargeability. For example, under § 523(a)(4), fraud by a fiduciary is not dischargeable. But, the nature of a fiduciary under § 523(a)(4) may be different, and narrower, than under state law. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Miller v. J.D. Abrams, Inc., (Matter of Miller)*, 156 F.3d 598, 602 (5th Cir., 1998), cert. denied, 526 U.S. 1016, 119 S.Ct. 1249, 143 L.Ed.2d 347 (1999); 4 COLLIER ON BANKRUPTCY ¶ 523.10[1][C], at 523–73 (15th ed. rev., 1998).

For these reasons—the waste of resources by creditors, debtors and courts in forcing the litigation of all potential dischargeability issues in every pre-petition collection case for fear that the debtor might file bankruptcy in the indeterminate future; the expertise of the bankruptcy courts in resolving dischargeability issues; and curbing creditor abuse—the Supreme Court declined to give *res judicata* effect to state court judgments obtained prior to the filing of a petition in bankruptcy.[8]

Congress recognized these policies in the enactment in 1978 of the Bankruptcy Code. It continued to require dischargeability issues on most grounds to be litigated in the bankruptcy courts. *See* 11 U.S.C. § 523(c). It enjoined the commencement and continuation of suits filed pre-petition. *See* 11 U.S.C. § 362(a)(1).

7. A discharge in bankruptcy was typically an affirmative defense. If the debtor failed to raise it, it was waived and the debt would be enforced. *Robertson v. Interstate Securities Co.*, 435 F.2d 784, 786 n. 3 (8th Cir., 1971); *Rouhib v. Michigan Bank*, 345 F.2d 782, 783 (6th Cir., 1965); *McGee v. Budget Premium Fin. Co.*, 340 F.2d 315, 316 (7th Cir., 1965); *Briskin v. White*, 296 F.2d 132, 136 n. 2 (9th Cir., 1961); *Helms v. Holmes*, 129 F.2d 263, 265–66 (4th Cir., 1942).

8. While *res judicata* is generally unavailable in dischargeability actions, a prior state court judgment may prevent the relitigation of certain issues under the doctrine of collateral estoppel. *See Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991); *Genesys Data Technologies, supra*. Whether the absence of an "actually litigated" element in the law of collateral estoppel of the applicable forum would meet with the same fate as the doctrine *res judicata* in *Felsen*, was not addressed or decided.

It enjoined post-petition efforts to collect discharged debts. *See* 11 U.S.C. § 524(a). Restrictions were placed on reaffirmations and waivers of the discharge were voided. *See* 11 U.S.C. § 524(c).

## B. Application in Dischargeability Cases to Post–Petition Judgments.

The principals enunciated by the Supreme Court in *Felsen* do not support its extension to the facts presented in this case. In *Felsen*, the Supreme Court examined the effect of a **pre-petition** judgment. Here, there is a **post-petition** judgment. The judgment was obtained after this bankruptcy court modified the automatic stay to permit the litigation to proceed in a different forum.

The Supreme Court identified several issues that precluded the application of *res judicata* to pre-petition state court judgments. One issue was that *res judicata* is equally applicable against both the debtor and the creditor. Application of *res judicata* would require a creditor to allege and prove elements of dischargeability that might not be necessary at state law to recover on the judgment. It would also require the debtor to defend these claims so as to preserve his right to a full discharge. Both assume that the debtor may file bankruptcy in the future. In fact, most defendants in civil suits do not later file bankruptcy. However, in the post-petition judgment situation, all of the parties are well aware that the debtor has already filed bankruptcy and that the only way that the debt will be enforceable is to allege and prove that is falls within § 523. Consequently, the issue of bankruptcy is no longer hypothetical. It is an established fact. The parties are aware of what they must allege and prove or what they must defend against.

Post-petition litigation is controlled by the bankruptcy court. While the bankruptcy case is pending, the bankruptcy court can grant relief from the stay to permit the litigation to proceed in another forum. It can insist that the discharge-ability action be tried in the bankruptcy court. There are good reasons to modify the stay to permit litigation in another court. There may be other defendants. Unless the stay is lifted and all parties are joined as defendants in one suit, the same case may be tried twice in two different courts. This is a waste of resources for the parties and one of the courts involved. In addition, it also raises the specter of inconsistent results between the two forums. Both problems are eliminated by permitting one court to try the case as to all defendants and giving full *res judicata* effect to the judgment obtained. Again, during this litigation, bankruptcy is no longer a specter but a reality. The parties know what must be both alleged and proven, and what defenses must be made. The bankruptcy court can determine whether the issues to be tried are primarily bankruptcy issues for which its expertise is necessary or whether the expertise of another forum is more appropriate. In determining whether to modify the automatic stay, the bankruptcy court can take into account the status of the litigation in the other forum. If it is too far advanced and the debtor is disadvantaged by not being able to fully and fairly participate in that proceeding, it may be inappropriate to modify the stay to permit the debtor to be added in that forum. However, if the suit has not significantly matured and if the debtor will have a full and fair opportunity to participate in the case without suffering significant detriment through loss of discovery rights or other rights in the litigation, the stay may be modified.

In these instances, the factors set out in *Felsen* as to pre-petition judgments are no longer compelling. They are satisfied by the control of the litigation by the bankruptcy court. There is, therefore, every reason to give full *res judicata* effect to the litigation in the non-bankruptcy forum. Considering the same factors that led the Supreme Court to reject the application of *res judicata* to *pre-petition* judgments, this court concludes that *res*

*judicata* is applicable to *post-petition* judgments obtained after relief from the automatic stay is granted by the bankruptcy court to pursue that litigation.

This result is the same as reached by other courts in cases where the suit alleging one of the dischargeability grounds for which a complaint is not required to be filed in the bankruptcy court is commenced after the discharge is granted, the automatic stay terminated, and the bankruptcy case closed. *See* 11 U.S.C. § 523(c). In the case of *In re Ascue*, 146 B.R. 665 (Bankr.E.D.Va., 1992), the bankruptcy court denied a motion to reopen a bankruptcy case to determine the dischargeability of a student loan. After the discharge was granted and the case was closed, the United States Public Health Service filed a complaint against the debtor in the United States District Court. The debtor filed no answer and a judgment was entered by the district court against the debtor. The bankruptcy court held that it must give full faith and credit to a judgment entered by the district court and would not inquire into the underlying merits. Similarly, in *In re Crawford*, 183 B.R. 103 (Bankr.W.D.Va., 1995), the former spouse of the debtor sought to enforce a pre-petition support obligation after the granting of a discharge to the debtor. The bankruptcy court held that the state court had concurrent jurisdiction with the bankruptcy court to determine the dischargeability of an obligation under § 523(a)(5). Because the debtor submitted to the jurisdiction of the state court after the granting of the discharge and did not seek to remove the matter to the bankruptcy court, he could not, after having lost in the state court, seek to enforce the discharge injunction by way of a contempt motion in the bankruptcy court. The bankruptcy court

was barred by principles of *res judicata* from rehearing the issue. The state court heard the case and determined the discharge issue. In both cases, the post-petition judgments were given full *res judicata* effect.

In fact, *Daily* is better understood as a *res judicata* case. The district court litigation was commenced as to Daily after he filed bankruptcy and after the bankruptcy court granted relief from the automatic stay. Even more telling is the agreement by the parties to be bound by the result in the district court, a recognition of the parties of the *res judicata* effect of the district court litigation. If the district court judgment were given full *res judicata* effect, the result in *Daily* would have been the same.[9]

Similarly, in *Pacific Energy and Minerals, Ltd. v. Austin (In re Austin)*, 93 B.R. 723 (Bankr.D.Colo., 1988), a recalcitrant debtor obtained two delays of a trial. The state court action was commenced in December, 1984, in El Paso County, Colorado. A pre-trial conference was held in December, 1985, and a trial was first scheduled for August 19, 1986. On the day of the trial, the trial court denied the debtor's request for a continuance. The debtor immediately filed a voluntary petition in bankruptcy pursuant to chapter 11 of the United States Bankruptcy Code. The automatic stay precluded further litigation in the state court. The plaintiff obtained relief from the automatic stay which permitted the plaintiff to proceed against the debtor in state court. A trial date was set for October 13, 1987. On the second scheduled trial date, the case was converted to a chapter 7 proceeding and the case stayed once again. Finally, after relief from the stay was granted by the

---

9. Default judgments may be the basis to preclude further litigation under the doctrine of *res judicata*. "A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default." *Riehle v. Margolies*, 279 U.S. 218, 225, 49 S.Ct. 310, 313, 73 L.Ed. 669 (1929). *See also* 18 MOORE's FEDERAL PRACTICE ¶ 131.30[3][d] (3d ed., 2000). Defaults may be for failure to appear or, after appearing, for failure to plead or comply with procedural rules.

bankruptcy court, a trial was scheduled in the state court on February 16, 1988. On the date of the trial, debtor's counsel appeared and advised the court that the debtor consented to the judgment.[10] The matter then returned to the bankruptcy court, which determined that the debt was not dischargeable, a result required by the application of the doctrine of *res judicata* to a post-petition state court judgment entered after the bankruptcy court granted relief from the automatic stay to pursue the litigation.

### C. Application of Res Judicata in this Case

It remains to examine the district court record to determine if it is sufficient to deny the discharge of this debt on the basis of *res judicata*. *Combs*, 838 F.2d at 115. The complaint alleged embezzlement and larceny. Each of the elements of these counts are coextensive with the elements set forth in § 523(a)(4). The allegation that the debtor committed fraud while acting in a fiduciary capacity is not sufficient to bring it within fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4). The definition of a fiduciary under the Bankruptcy Code is much narrower than that alleged or shown in the New York litigation. The allegations proven in the district court proceeding also state a cause of action for fraud under RICO for which treble damages are appropriate and were awarded. Punitive damages follow the nature of the fraud and are nondischargeable. *Cohen v. de la Cruz*, 523 U.S. 213, 218, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998). After a careful review of the district court record, this court finds that the claims pled in this adversary proceeding were included in the district court complaint and judgment. The principles of *res judicata* are applica-

ble and, therefore, the judgment granted by the district court will be declared to be nondischargeable.

---

10. For purposes of *res judicata*, consent decrees have the same preclusive effect as fully litigated judgments. *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir., 1990), *cert. denied sub nom. Keith v. Rice*, 498 U.S. 900 111 S.Ct. 257, 112 L.Ed.2d 215 (1990) (preclusive effect of consent judgment is determined by consent of parties); *Adams v. Proctor & Gamble Mfg. Co.*, 678 F.2d 1190, 1195, *on rehearing*, 697 F.2d 582 (4th Cir., 1983), *cert. denied* 465 U.S. 1041, 104 S.Ct. 1318, 79 L.Ed.2d 714 (1984).