In re Dona H. SLY, Joann
E. Sly, Debtors.

Dona H. Sly, Joann E. Sly, Plaintiffs,

v.

United States of America (Treasury Department, Internal Revenue Service Division), Defendant.

Bankruptcy No. 90–04377.
Adversary No. 01–80025.

United States Bankruptcy Court,
N.D. Florida,
Pensacola Division.

Feb. 26, 2002.

James L. Chase, Pensacola, FL, for debtor.

Wendy K. Vann, Trial Attorney, Tax Division, U.S. Dept. of Justice, Washington, D.C., for U.S. Dept. of Treasury, IRS.

### ORDER DENYING THE MOTIONS OF BOTH THE UNITED STATES AND DEBTORS FOR SUMMARY JUDGMENT

MARGARET A. MAHONEY, Bankruptcy Judge.

This matter is before the Court on the opposing motions for summary judgment of the Plaintiffs and Defendant in this adversary proceeding. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court has the authority to enter a final order. For the reasons indicated below, this Court is denying the motions of the United States and Debtors for summary judgment.

### FACTS

On September 15, 1988, the United States Tax Court entered an order which included a default judgment against Dona and Joann Sly for tax fraud for the years 1980, 1981 and 1982. *Sly v. Commissioner*, T.C. Memo. 1988–443, 1988 WL 94450 ("Sly I"). The Court found the Slys in default because they had failed to comply with an order of the Tax Court. The Slys initiated the case to determine their tax liability. Some of the facts had been stipulated. The record in the case consisted of a 481 page transcript and stipulated exhibits "which may be stacked to a height of nearly five feet." *Id.* at *3. Because of the

overwhelming volume of records the Court ordered the Slys to take specific steps to make the Court's decision making process "reasonable and practical." *Id.* The Court issued an order directing the Slys to provide the Court and the United States with a schedule setting forth the Slys' gross income for each year in issue, the source from which the income was derived, each deduction claimed, and for each deduction the amount of the expense, the payee, the basis for the deduction, and the specific cites to the record for the deduction. The Slys did not file anything with the Court in response to the Court's order. The Slys did provide the United States with a series of schedules; however, they were incomplete and were never filed with the Court. The United States moved to dismiss and for default judgment. In support of its motion the United States attached photocopies of correspondence reflecting the efforts of the United States to meet with Mr. Sly and his accountant in an effort to work out further stipulated facts. The Slys filed a response to the motion that merely restated their arguments in the case. The Court deemed admitted by the Slys the factual and conclusory fraud allegations contained in the United States' answer and awarded the United States a default judgment against the Slys for tax fraud for the years 1980, 1981, and 1982.

On July 31, 1989 the United States Tax Court entered an order which held that the Slys were not liable for tax fraud for the year 1983. The Court determined that there was a tax deficiency, but fraud was not proven. The primary issue in the case involved Mr. Sly's entitlement to deductions for expenses incurred in the ordinary course of his trade or business.[1]

The Court stated that the United States had the burden of proof by clear and convincing evidence and had to show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. The Court found that the United States had not proven fraud by clear and convincing evidence [2].

---

1. Mr. Sly was self-employed during 1983 as a distributor for Help Educate Loyal Parents, which provided literature designed for teaching drug abuse awareness and prevention. Mr. Sly sold advertising space in the literature to be distributed. Persons who did not wish to purchase the smallest ad available could purchase composite ads through the Fight Against Narcotics Club (FAN Club) which was a department of the Universal Church of Jesus Christ (Church), of which petitioner was pastor. Checks for ads purchased through the FAN Club were deposited to the account of the Bureau of Collections, which was also a part of the Church. The Church had been found in a prior case, *Universal Church of Jesus Christ, Inc. v. Commissioner*, T.C. Memo. 1988–65, to not be a tax exempt organization. Mr. Sly conceded that the Church, the Bureau of Collections and the Fan Club were his alter ego. Mr. Sly kept some receipts and some records of the many travel expenses he incurred in his business. In many instances, petitioner altered or manufactured receipts for his lodging expenses.

On his 1983 return, Mr. Sly claimed a deduction for charitable contributions to the Church and a deduction for a long-term capital loss on the sale of stock. Both of these deductions Mr. Sly conceded he was not entitled to.

2. The mere fact that Sly had failed to report income was not conclusive. There was no evidence that Sly's failure to report income from donations to the Fan Club was part of a pattern of underreporting income that would justify the inference of fraud. As to the alteration and manufacture of lodging receipts, the Court accepted the petitioner's argument that he thought he was trading two items of equal value, advertisement for lodging. The Court also found that the Slys' deduction for charitable contributions to the Church was not done with the intent to evade or defeat taxes since the issue of whether the Church qualified as a charitable organization had not yet been determined. The Court also found that Sly's long-term capital loss deduction for the sale of stock was not fraudulent.

On April 30, 1990, Dona and Joann Sly filed a Chapter 7 bankruptcy case. The Slys listed on their bankruptcy schedules delinquent personal income tax claims owed to the IRS for the years 1977 through 1983, including interest and penalties. The Slys received a discharge on March 3, 1993. The Slys filed this adversary requesting that the Court determine that all of the taxes for the tax years 1980 through 1983, together with respective interest and penalties, were discharged.

## LAW

Motions for summary judgment are controlled by Rule 56 of the Federal Rules of Civil Procedure, which has been made applicable to bankruptcy proceedings pursuant to Fed. R. Bankr.P. 7056. A court shall grant summary judgment to a party when the movant shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Bankr.P. 7056(c). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court found that a judge's function is not to determine the truth of the matter asserted or weight of the evidence presented, but to determine whether or not the factual disputes raise genuine issues for trial. *Anderson*, at 2510, 2511. All inferences are resolved in favor of the party defending against each motion. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844 (11th Cir.2000); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir.1997). The parties have each filed summary judgment motions so they will each be judged on their merits as if the opposing motion constitutes a response. The United States moved for summary judgment as to the nondischargeability of the Slys' federal income tax liabilities for the years 1980 through 1983. The Slys moved for summary judgment as to the dischargeability of their federal income tax liability for the years 1980 through 1982.

The issue is whether the United States' tax claim against the Slys was discharged by their bankruptcy case. A debtor is not discharged from a tax debt if "the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). The parties do not dispute the basic facts outlined above. They do disagree as to the legal significance of the two court cases— Sly I and Sly II. The United States claims that this Court should apply collateral estoppel to foreclose the Slys from litigating the issue of fraud as to the Slys' 1980–1982 income tax returns based on the default judgment entered against the Slys in Sly I which found that the Slys filed fraudulent federal income tax returns for the tax years 1980–1982. Conversely the Slys assert that this Court should apply collateral estoppel to foreclose the United States from litigating the issue of fraud as to the Slys' 1980–1982 income tax returns based on Sly II which found the Slys were not fraudulent as to their 1983 tax liabilities. If neither of the tax court cases are found to have collateral estoppel effect then the specific facts of this matter would be in dispute and summary judgment would not be proper.

■ Collateral estoppel can be used in discharge proceedings to prohibit the relitigation of issues that have been adjudicated in a prior action. *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1322 (11th Cir.1995). Because the preclusive effect of prior federal judgments are at issue, the law to be applied in this case is also federal. *Palmer v. United States*, 1998 WL 739979 (9th Cir. BAP 1998). In order for collateral estoppel to

apply the following four elements must be present:

1. The issue in the prior action and the issue in the bankruptcy court are identical;

2. The bankruptcy issue was actually litigated in the prior action;

3. The determination of the issue in the prior action was a critical and necessary part of the judgment in that litigation; and

4. The burden of persuasion in the discharge proceeding must not be significantly heavier than the burden of persuasion in the initial action.

*Id.* This Court will discuss these elements and the applicability of collateral estoppel to Sly I and Sly II below.

### A.

### *Collateral Estoppel of Sly I*

■ Three of the four elements of collateral estoppel listed above are clearly satisfied by Sly I. Sly I involves the same issues as are involved here at least for the tax liability for the years 1980 through 1982. Both Sly I and this dischargeability case involve whether the Slys' tax returns for those years were fraudulent. The determination as to whether the Slys were fraudulent was a critical and necessary part of the judgment in Sly I. The burden of persuasion in this discharge proceeding is not heavier than the burden in the Sly case. The element that is not clearly satisfied is element two—the bankruptcy issue was actually litigated. The general federal rule is that a default judgment will not support the application of collateral estoppel because the issues were not "actually litigated." *Bush*, 62 F.3d at 1323 (citations omitted). The Sly judgment was a default judgment. As the *Bush* case noted, the underlying rationale of the general rule is that "a party may decide that

the amount at stake does not justify the expense and vexation of putting up a fight." *Id.* at 1324 (quoting *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983)).

However, there are exceptions to the general rule. Where the debtor was given the full opportunity to defend himself in the prior action and chose not to do so, some courts have given preclusive effect to a default judgment. *Id.* The *Bush* court found that it would be undeserved to give the debtor "a second bite at the apple when he knowingly chose not to defend himself in the first instance" and he could have reasonably foreseen the consequences of not defending himself. *Id.* (quoting *In re Wilson*, 72 B.R. 956, 959 (Bankr. M.D.Fla.1987)). The *Bush* court based its decision on the fact that the debtor in that case "substantially participated" in the action, had a "full and fair opportunity to defend on the merits," and even attempted to "frustrate the effort to bring the action to judgment." *Bush*, 62 F.3d at 1324–25. The default judgment against Bush was entered based on a finding that his conduct warranted the imposition of sanctions. *Id.* at 1321. Bush was initially represented by counsel but his counsel had such difficulty contacting him that the district court allowed his counsel to withdraw from the case. Acting pro se, Bush failed to produce trial exhibits despite repeated requests. *Id.* He also failed to appear for his deposition. *Id.* A motion for sanctions was filed against Bush, and a pretrial conference was set, but Bush again failed to appear. *Id.* Bush did more than just participate in the action; he engaged in serious misconduct.

■ Other courts have also recognized this exception to the general rule of non-preclusive effect to default judgments. Where a federal default judgment was entered because of the serious obstructive

conduct of a party the default judgment will have preclusive effect. *See e.g., Magdelena Moretta McCart v. Jordana (In re Jordana)*, 232 B.R. 469, 472 (10th Cir. BAP 1999) *aff'd* 216 F.3d 1087 (10th Cir. 2000) (Jordana "assiduously pursued a policy of obfuscation," absconding with the original copy of his deposition and refusing to return it, refusing to cooperate and comply with discovery requests and refusing to answer the plaintiff's First Amended Complaint, in spite of repeated warnings.); *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 213 (3rd Cir. 1997) (Docteroff's repeated refusal to submit to depositions or respond to requests for production of documents despite court orders and warnings "was the product of willfulness and bad faith."); *Federal Deposit Ins. Corp. v. Daily (In re Daily)*, 47 F.3d 365, 367 (9th Cir.1995) (Debtor's failure to provide discovery was "the result of a deliberate, dilatory course of conduct" and was part of a "strategy of delay and evasiveness" which "significantly prejudiced the plaintiffs").

The Ninth Circuit case of *Palmer v. United States*, 1998 WL 739979 (9th Cir. BAP 1998) is similar to this case. In *Palmer*, the debtor petitioned the tax court for a redetermination of his tax liability and the IRS filed an answer and affirmatively alleged fraud. *Id.* at *1. Mr. Palmer did not respond to the IRS's answer and affirmative allegations. The IRS then requested the Tax Court to order the allegations admitted and Mr. Palmer did not oppose the motion. The Tax Court ordered that the specified affirmative allegations were deemed admitted. *Id.* The Ninth Circuit found that Mr. Palmer's situation was "comparable to the failure of a defendant to answer or respond to a complaint, the typical default situation." *Id.* at *3. The Court explained that the case was initiated by Mr. Palmer; but Mr. Palmer did not initiate the fraud action. *Id.* at *4.

The fraud allegation was raised by the IRS in its answer, otherwise it would not have been an issue. *Id.* Since the fraud issue was not actually litigated, collateral estoppel did not apply.

■ Like the *Palmer* case, the Slys initiated the tax court action. The Slys participated in the suit. Because of the Slys' failure to respond to the Court's request for more information, the Court deemed admitted the fraud allegations contained in the answer of the United States. The Slys' participation in their suit appears to be more extensive than that of the debtor in the *Palmer* case. The Slys did not merely fail to respond to affirmative allegations of the United States. The Slys proceeded to trial of the matter and after the trial the Court determined that the exhibits were too voluminous for the Court to reasonably be expected to rule on the matter. The Court requested and then demanded further information or stipulation and the Slys failed to respond. The United States attempted to meet with the Slys and obtain the information, but the Slys did not cooperate.

Does the Slys' behavior rise to the level of being seriously obstructive or willful and in bad faith such that collateral estoppel should apply? The case of *In re Gilson*, 250 B.R. 226 (Bankr.E.D.Va.2000) discussed the *Daily* and *Bush* cases and the limits of collateral estoppel in the default judgment context. The debtor in *Gilson* filed an answer in the prior suit but did not respond to discovery and a default as a sanction was entered against her. *Id.* at 230. The matter was referred to a magistrate judge to determine damages. *Id.* at 230–31. The debtor responded to opposing party's evidence as to damages by stating that she was the subject of a criminal investigation and was asserting her Fifth Amendment privilege against self-

incrimination. *Id.* at 231. A default judgment in the amount of $1,124,141.28 was entered against her and another defendant jointly and severally. *Id.* The *Gilson* Court noted that it is difficult to discern when participation becomes "substantial participation." *Id.* at 235. The Court explained that a debtor could participate extensively in a prior litigation; but at some point may have determined that further effort was not worth the costs involved. *Id.* It would be difficult to determine the subjective intent of the parties and whether the party's conduct was obstructive or in bad faith. The *Gilson* Court noted that:

> Res judicata bars all claims that were or might have been presented and all defenses that were or might have been presented as though they had been actually litigated. Collateral estoppel only bars issues actually litigated. To change the collateral estoppel "actually litigated" requirement to a mere "opportunity to fully and fairly participate" requirement would change a critical element of collateral estoppel and transform it substantially into res judicata.

*Gilson*, 250 B.R. at 233. The United States Supreme Court in *Brown v. Felsen* held that the doctrine of res judicata does not apply in bankruptcy nondischargeability proceedings. *In re King*, 103 F.3d 17, 19 (5th Cir.1997) (discussing *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)). According to the *Gilson* Court, "the 'actually litigated' requirement of collateral estoppel ought not be eroded" because like res judicata, the application of collateral estoppel to default judgments in dischargeability cases would block "unexplored paths that may lead to truth." *Gilson*, 250 B.R. at 233 (quoting *Brown v. Felsen, supra*).

This Court concludes, based on the above discussion of the law and the facts of this case, and looking at the facts in the light most favorable to the opposing party, that the Slys' behavior in the prior federal action did not rise to the level of serious misconduct or obstructive behavior. The Slys' failure to provide the information may have been the result of their determination that further effort was not worth the costs involved. Because of the 481 page transcript and stipulated exhibits which could be stacked to a height of nearly five feet and the amount of detailed information that was requested of them, it may have been unreasonable and impracticable for the Slys to "justify the expense and vexation of putting up a fight." *Bush*, 62 F.3d at 1324. There was no showing that the Slys' behavior "was the product of willfulness and bad faith" like the debtor in *Docteroff*, 133 F.3d at 213, or was part of a "strategy of delay and evasiveness" which "significantly prejudiced the plaintiffs" as in *Daily*, 47 F.3d at 367, or that the Slys "assiduously pursued a policy of obfuscation" as in *Jordana*, 232 B.R. at 472. It appears that the Slys simply gave up and allowed the judgment to be entered upon being confronted with the task requested of them. The very reason the Tax Court had requested the information was because the evidence and documents were so voluminous that it was unreasonable and impracticable for the Court to analyze them and attain the information. The Slys failed to respond to the Court's order and were properly sanctioned by the entry of a default judgment against them. That judgment still stands. However, the issue here is not whether the debt is owed, but whether the debt is nondischargeable. This Court does not find as a matter of law that it is nondischargeable.

### B.

### *Collateral Estoppel of Sly II*

In Sly II the Court did not find that the Slys were fraudulent. Some of

the elements necessary for collateral estoppel to apply are satisfied by Sly II. The issue of whether the Slys' tax returns for the year 1983 was filed fraudulently is also an issue in this dischargeability case. Clearly, that issue was fully litigated in Sly II and it was a critical and necessary part of that litigation. However, for tax liability for the years 1980 through 1982, element one is not satisfied—the issue in Sly II and this case are not identical. Sly II involved tax liability only for the year 1983. The facts and issues regarding tax liability in 1983 may be different from the facts and issues for the earlier years. Additionally, the Court denied the allegations of fraud because the United States had not proven them by "clear and convincing evidence." The burden of proof was significantly heavier than the burden in this dischargeability case. In this case, the United States only bears the burden of proving each element by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Therefore, the finding by the Tax Court that the Slys were not fraudulent will not preclude this Court from making its own determination as to the dischargeability of the tax debt.

THEREFORE IT IS ORDERED:

1. The motion of the United States for summary judgment is DENIED.

2. The motion of Dona and Joann Sly for summary judgment is DENIED.